428 So.2d 790 (1983)
STATE of Louisiana
v.
Houston M. WISENBAKER, Jr.
No. 82-KA-0451.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied April 15, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Paul Donald White, Jr., Ronald G. Levy, Asst. Dist. Attys., for plaintiff-appellee.
Stephen E. Everett, Louis G. Mehr, Alexandria, for defendant-appellant.
*791 LEMMON, Justice.
This case illustrates the difficult position in which a conscientious trial judge finds himself when retained local counsel has been permitted (by another judge in the district) to withdraw from representation of an out-of-state defendant and retained out-of-state counsel fails to appear for trial. Although defendant urges other assignments of error, our decision turns on our conclusion that the trial court erred under the totality of circumstances in denying defendant's pro se motion for a continuance, based upon the unavailability of counsel, and in forcing defendant to commence trial unrepresented.

I.
Defendant, a Texas businessman and promoter, acquired ownership of a financially troubled cemetery in Alexandria in the name of Provident General Corporation, which was exclusively controlled (and apparently owned) by defendant. The business was experiencing rather serious "cash flow" problems, and past-due debts caused suppliers of memorial markers to refuse to accept new orders until past accounts were settled. Despite this situation, defendant allowed and encouraged his employees to continue to accept funds for the purchase of markers. Defendant also directed that the money be deposited into general checking accounts of the corporation, rather than into any sort of merchandise trust fund. The funds were disbursed upon defendant's order, and evidence introduced at trial showed that numerous substantial payments from the checking accounts were made to defendant himself, to his wife, or to his corporations.[1]
Between September, 1978 (the month Provident General acquired the cemetery) and October 2, 1979 (the date on which defendant and the corporation filed for reorganization in bankruptcy court), nine persons paid amounts varying from $557.44 to $994.24 to the corporation for memorial markers which, although needed for specified graves at the time of purchase, were never acquired or even ordered. These nine transactions formed the basis of the state's nine-count theft indictment on which defendant was convicted after a four-day jury trial. Defendant was subsequently sentenced to serve a total of nine years imprisonment at hard labor and to pay fines totaling $9,000.

II.
After his indictment on October 18, 1979, defendant was eventually extradited to Louisiana. When he appeared in court on December 18, 1980 for his 72-hour hearing, he informed the trial judge that he had retained Texas counsel and additionally intended to retain local counsel.
On January 8, 1981, the trial judge conducted a hearing on defendant's motion to reduce bail, and defendant was represented by two Texas lawyers, George Parnham and Louis Mehr, and by an Alexandria lawyer.[2] Again on March 18, 1981, defendant appeared with the same three lawyers for arraignment. Defendant entered a plea of not guilty, and the case was set for trial on July 13, 1981 (the date on which the trial actually commenced).[3] The date was selected after the attorneys checked their schedules.
On April 11, 1981, the Alexandria lawyer filed various pretrial discovery motions and a motion for a bill of particulars on behalf of defendant. However, on May 4, 1981, the Alexandria attorney moved to withdraw *792 from the case. His motion was granted by a district judge (other than the one in whose division the matter was pending for trial), leaving defendant without representation by a member of the Louisiana bar.
Noticing that the defense motions filed by the Alexandria lawyer were still pending, the prosecutor filed a motion to traverse and personally discussed the motion with Parnham, who stated that defendant had informed him of the hearings, but that he did not know if he would appear. When neither defendant nor counsel appeared on June 19,1981 for the hearing, the judge dismissed the defense motions. Unfortunately, although expressly alerted by the prosecutor to the fact that defendant was not represented by a member of the Louisiana bar, the trial judge took no action to insure that defendant would be represented on July 13 by a lawyer whose appearance the trial judge had power to compel.[4]
Shortly after the defense motions were dismissed on June 19, the prosecutor contacted Parnham again by telephone and wrote defendant a letter (which defendant at trial denied receiving), reiterating the fact that the state planned to try the case on July 13.
On Tuesday, July 7, the prosecutor (who expressed concern at every stage about defendant's not having a lawyer authorized to practice in Louisiana) again telephoned Parnham "to ascertain what Mr. Wisenbaker's intentions were". Parnham stated he would speak to defendant and would get back in touch with the prosecutor. On Friday, July 10, Parnham flew to Alexandria to confer with the trial judge and filed a handwritten motion for a continuance, alleging that he had a trial scheduled in Texas on July 13.[5] The trial judge informed him that a subsequent civil engagement was not grounds for a continuance of the scheduled trial, but did not act on the motion.
On Monday, July 13 (the trial date), defendant appeared in court, but was not represented because the two Texas lawyers did not appear and the Louisiana lawyer had been permitted to withdraw.[6] (The second Texas lawyer appeared later during the trial, but came as a witness to testify on defendant's behalf and not in the capacity of a lawyer.)
Defendant objected to going to trial without an attorney and stated he had not seen the motion for continuance filed the previous Friday. He reiterated that he had originally hired local counsel (in addition to the two Texas lawyers) and asserted that he had filed an application in bankruptcy court for funds to pay the fee of the Louisiana lawyer, but that the bankruptcy judge had not acted on his application, despite several requests. Because his local counsel had withdrawn when his fee was not forthcoming, and because his Texas lawyers did not appear, defendant requested additional time to obtain counsel, but the trial court denied the continuance and ordered defendant to trial without counsel.[7]

*793 III.
An accused cannot be compelled to defend himself unaided by counsel because his retained lawyer failed to manage his trial schedule properly and does not appear for trial. Since the issue here must be viewed in terms of whether defendant waived his right to counsel when he appeared alone on July 13, the state must bear the burden of proof as to whether the dereliction was attributable to defendant or to defense counsel.
If counsel, and not defendant, was at fault for counsel's failure to appear or to give timely notice to the trial court of a conflict in schedule, then sanctions must be taken against counsel, not the defendant.[8]City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). Counsel's failure to appear cannot be equated with a waiver by the defendant of his right to counsel, unless defendant was responsible for the nonappearance. As this court said in a unanimous decision in the Dees case:
"Whatever may have been the court's right to discipline counsel if the present motion for continuance was untimely or ill-founded, the client cannot be penalized, by the loss of his constitutional right to legal representation at his trial, for his lawyer's lapse arising out of a conflict in the lawyer's trial schedule. This conviction, resulting in imprisonment by an unrepresented defendant who had not waived counsel, must be set aside as having been obtained in violation of the accused's constitutional right to the assistance of counsel at his trial." 363 So.2d at 532.
The record in the present case does not establish that defendant's failure to have retained counsel present at the outset of trial was the result of a knowing and voluntary waiver of his right to counsel or of conduct by defendant which might reasonably be deemed to constitute waiver of counsel. Rather, the record here portrays an individual abandoned by counsel who had previously indicated a willingness and ability to represent him at his July 13 trial. There is no suggestion that defendant deliberately chose not to retain counsel, despite his financial ability to do so, or that he used the absence of counsel as a ploy to delay his trial.[9] The record simply does not show that defendant (as opposed to his Texas lawyer) was at fault in not having counsel appear with him on the morning that the trial was scheduled to commence.[10]
*794 Despite the commendable efforts of the prosecutor and the trial court to assist defendant in the jury selection and in the handling of his case, the fact remains that defendant was compelled to defend himself during the first two and one-half days of his four-day trial without the aid of counsel.[11] Because the record does not reflect a knowing and intelligent waiver of counsel or conduct by defendant which amounts to a waiver, defendant's conviction must be reversed and the case remanded for a new trial. See City of Baton Rouge v. Dees, above.
Accordingly, the conviction is reversed, and the matter is remanded for a new trial.
NOTES
[1] For example, the prosecutor showed that defendant had the bookkeeper for the cemetery transfer $800 from the general account to an account of Provident General so that the corporation could pay a medical bill for a nose operation performed on defendant's stepdaughter.
[2] Bail was reduced to $10,000 on each of 15 counts. Defendant eventually furnished bail and obtained his release from custody.
[3] Because defendant initially asserted he had retained counsel and later appeared with counsel, the trial judge did not, either at the 72-hour hearing or at the arraignment, inform defendant that counsel would be appointed to represent him without cost if he was unable to pay for retained counsel.
[4] This comment is not intended to criticize a competent trial judge, but rather to point out one spot in the proceedings where the protection of defendant's right to counsel broke down, despite diligent efforts by the prosecutor and the judge to bring the matter to trial on the appointed date. One can easily understand why the trial judge, at this point in the proceedings, did not anticipate the possibility that retained counsel from Texas would not appear for trial, inasmuch as he had appeared twice for preliminary matters. Nevertheless, the judge could not compel Texas counsel to appear for trial and should have, as soon as he discovered Louisiana counsel had been permitted to withdraw, either (1) required defendant to have a Louisiana lawyer enroll of record within a reasonable time, (2) obtained a waiver of counsel, or (3) appointed counsel to represent defendant.
[5] There was no showing regarding the circumstances surrounding the conflict in trial schedules. Significantly, there was no finding by the trial court as to the point at which defendant became aware that the Texas lawyer would not attend the Louisiana trial.
[6] Trial judges may, of course, refuse to grant a motion for counsel to withdraw until another lawyer has been retained or appointed.
[7] At this point, the trial judge might have inquired into defendant's financial ability to employ local counsel of his choice. If defendant was financially able to employ local counsel, then he should have done so, and his failure to have local counsel is attributable to him alone. However, irrespective of defendant's possible fault in failing to employ local counsel, the fact remains that defendant did employ Texas counsel early in the proceedings, and the decision turns on whether that lawyer abandoned him.
[8] If the judge, upon learning defendant was represented only by out-of-state lawyers, had either appointed a Louisiana lawyer or required defendant (after determining his financial ability) to employ local counsel (or to waive counsel expressly), then the judge could have compelled counsel's attendance without unduly delaying the trial.
[9] The Texas lawyer may have failed to appear as a ploy to force the continuance and may be subject to some type of sanction. However, unless defendant was a party to such a plot, he cannot be viewed as having waived his right to counsel.
[10] It is well settled that defendant was entitled to the assistance of counsel during his trial. U.S. Const.Amend. VI; La.Const. Art. I, § 13 (1974). Further, the burden clearly falls upon the state to establish that defendant intelligently and voluntarily waived the assistance of counsel. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If an accused repeatedly fails to retain counsel for trial, or if he appears without counsel after being clearly and unequivocally warned by the trial court that the case will be tried regardless, such fact may support a finding of implied waiver. However, the facts here do not support such a finding of waiver. For example, see State v. Jacobs, 271 S.C. 126, 245 S.E.2d 606 (S.C.1978). If the trial judge at some stage had given defendant one week to retain counsel or to go to trial unaided and defendant had appeared without representation, another result might be justified.

We do not here attempt to outline the procedures to be taken in a case in which a person appears without counsel for trial. All we decide here is that the record does not support a conclusion that defendant expressly or implicitly waived his right to the assistance of counsel. See State v. Moore, 203 Neb. 94, 277 N.W.2d 554 (Neb.1979); City of Baton Rouge v. Dees, above; State v. McGowan, 359 So.2d 972 (La. 1978).
[11] After the trial had commenced and the state had presented its case in chief, an attorney from New Orleans appeared and began to endeavor to assist the defendant. Nevertheless, since the "right to counsel" is the right to be represented during the entire proceedings (that is, at every stage of the proceedings, La.Const. Art. I, § 13), the "late arrival" is not of controlling significance. Moreover, defendant was denied the assistance of counsel during the selection of the jury and during his cross-examination of most of the state's witnesses. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).