452 So.2d 149 (1984)
STATE of Louisiana
v.
Ronald L. BROOKS.
No. 81-KA-3259.
Supreme Court of Louisiana.
January 16, 1984.
On Rehearing June 25, 1984.
*150 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
J. Stacey Freeman, Bossier City, Wellborn Jack, Jr., Shreveport, for defendantappellant.
BLANCHE, Justice.
Defendant was indicted for possession of marijuana with intent to distribute. After finding him guilty as charged, the trial court sentenced defendant to ten years imprisonment and imposed a $5,000 fine. From this conviction, defendant now appeals.

FACTS
The sequence of events leading to defendant's arrest began when De Soto Parish Sheriff's Deputy Robert Davidson received a phone call from a confidential informant, notifying him that the defendant was parked near De Soto Junior High School, selling marijuana. Officer Davidson was familiar with the informant, who had provided him with reliable information on several prior occasions. The informant stated that he personally observed a certain quantity of marijuana in the car, and fully described defendant's car and license plate number.
Upon receiving the information, Officer Davidson (who knew defendant from an earlier arrest for possession of marijuana with intent to distribute) drove to the school area in an unmarked police car. After observing defendant get into a car matching the informant's description, Davidson followed defendant, placing a flashing red light on his dashboard. Thereafter, defendant pulled into a driveway and stopped. Several deputies joined Davidson, who informed defendant of the reason for the stop and asked permission to search the car. When this request was refused, the officers nevertheless searched the vehicle, and found thirteen packages of what was later determined to be marijuana. Defendant was then arrested and later charged with possession of marijuana with intent to distribute.
On June 25, 1981, defendant was arraigned and entered a plea of not guilty, advising the court that he was being represented *151 by David M. Cohn. Cohn filed a motion for a bill of particulars on July 7, 1981 and a motion to suppress the evidence from the search on July 10, 1981. After a hearing, the motion to suppress was denied. Trial was set for August 10, 1981. On August 6, 1981, defendant's family approached attorney J. Stacey Freeman to represent their son. The two attorneys appeared in court the following day and Cohn received permission to withdraw as counsel, with Freeman enrolling as counsel of record. Freeman then made an oral motion for a continuance, which was denied.
At trial, counsel for defendant took little part in the proceedings. No closing arguments were made and a jury verdict of guilty was returned after one hour of deliberation.

Assignment of Error # 1
By this assignment, defendant contends that his motion for a continuance was improperly denied by the trial court. Defendant maintains that his attorney had an inadequate amount of time in which to prepare for trial because his counsel's enrollment came only three days prior to trial.
We find that this assignment of error lacks merit. Article 712 of the Code of Criminal Procedure vests much discretion in the trial court's power to grant a continuance. Absent clear abuse, we will not disturb a trial court's refusal to grant such a motion. State v. Simpson, 403 So.2d 1214 (La.1981).
This Court has found abuse of discretion in instances where court appointed counsel has had such a minimal time from appointment to trial, that adequate preparation was impractical. State v. Benson, 368 So.2d 716 (La.1979), State v. Winston, 327 So.2d 380 (La.1976). As the Court stated in Winston: "Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case." 327 So.2d at 382.
In the instant case, defendant's decision to retain new counsel was made on the eve of the trial. Unlike the cases where counsel was appointed by the court immediately prior to trial, the present defendant was represented by his own counsel during the entire pretrial phase. The withdrawal of original counsel and the simultaneous enrollment of new counsel was not the unavoidable result of some accident or emergency. Instead, defendant appears to have made a deliberate decision to select another attorney to try the case.[1]
Additionally, defendant has demonstrated no prejudice which may have resulted from the failure to grant the continuance. Although defendant's new counsel claims that he was unable to receive a transcript of the evidentiary hearing on the motion to suppress, he does not suggest how the possession of such a transcript would have altered his trial preparation. As our treatment of assignment of error number two, infra, demonstrates, defendant's case was headed for disaster once the seized contraband was admitted. Thereafter, other than a plea for mercy, trial strategums had become severely limited. Defendant's trial counsel had access to the work and files of his predecessor, and makes no showing that the substance of what was brought out in the motion to suppress hearing was not available from former counsel; nor does he show that any new witnesses or evidence would have been available had more time been granted. To refuse to allow defendant to delay his trial by changing attorneys three days before trial, where the change was unnecessary and resulted in no prejudice to defendant, is certainly within the realm of a trial judge's discretion.

This assignment of error lacks merit.

Assignment of Error # 2
Defendant also objects to the trial court's failure to suppress the evidence seized at *152 the time of his arrest. Defendant argues that because the automobile was immobile at the time of the search, no exigency existed which would justify the search of the vehicle before a warrant was obtained.
The present standard for warrantless automobile searches under the Fourth Amendment was expressed in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). There, the U.S. Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed within it "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched." 102 S.Ct. at 2159. Thus, for purposes of analyzing warrantless automobile searches, the mobile/immobile distinction is no longer relevant. State v. Hernandez, 408 So.2d 911, 914 (La.1981).
In the instant case, Officer Davidson had probable cause to stop defendant's vehicle. Initially, a confidential informant provided Officer Davidson with the information that defendant was parked near a school selling marijuana, particularly describing the car and its location. A confidential informant may establish probable cause for a warrantless arrest, providing his underlying credibility is established. State v. Burton, 416 So.2d 73, 74 (La.1982). This credibility is ascertained by looking to the totality of the circumstances surrounding the tip. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Here, the informant was known by Officer Davidson and had provided reliable information in the past leading to numerous drug related convictions. Additionally, Officer Davidson knew defendant from a prior arrest. The informant's tip was corroborated when defendant was observed where the informant stated he would be, in a car matching the informant's description. Thus, probable cause existed to arrest defendant.
Once Officer Davidson stopped defendant, he could only search defendant's car if he possessed probable cause to believe that the vehicle contained marijuana. The tip provided by a reliable informant, and corroborated by defendant's presence at the location described in the tip, could of itself have provided the necessary probable cause. Moreover, Officer Davidson was familiar with defendant's prior drug activities and knew that defendant customarily concealed marijuana under the console between the seats in his car. Under the facts and circumstances, Officer Davidson was justified in believing that the vehicle contained marijuana, and was entitled to immediately search the vehicle at the time of arrest, without obtaining a warrant first. See Ross, Hernandez, supra.
This assignment of error lacks merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
WATSON, J., dissents as to Assignment of Error # 1.

On Rehearing
CALOGERO, Justice.
We granted a rehearing in this matter to consider whether Brooks was deprived of his constitutional right to counsel because his lawyer, after motion for continuance was denied and trial had commenced, did not assist Brooks at trial nor present a defense on his behalf. Upon review, we decide that, indeed, the failure of the defendant's counsel to participate at trial was a denial of Brooks' constitutional right to counsel.[1] Accordingly we reverse his conviction *153 and sentence and remand the case to the district court for a new trial.
The facts and circumstances of the defendant's arrest and conviction for possession of marijuana with intent to distribute are detailed in this Court's opinion on original hearing. Counsel's failure and refusal to present a defense at trial are accurately and thoroughly presented in the defendant's brief on application for rehearing presented by a different attorney enrolled only after the case was orally argued on appeal before this Court. Portions of that brief we adopt in pertinent part as follows:
"On the Monday morning of the trial, defense counsel re-urged the oral motion for continuance that he had unsuccessfully urged concurrently with his enrollment as counsel on the preceding Friday. Initially, on that Monday morning, counsel merely argued, `I'm just not ready to go to trial on this short notice and request a continuance.' Then, after the lawyers involved had entered into a `stipulation' concerning the events surrounding defense counsel's enrollment, defense counsel made his intentions unmistakably clear to the trial court:
I want to acquaint the court with the fact that I am not going to participate in the trial of this matter in any manner. I think the defendant understands my problem [there is no evidence of this anywhere in the record] and I don't think he is going to be prejudiced in any way by [my] not participating. The simple fact that I am here is not going to affect him one bit. (Emphasis added.)

. . . . .
"The trial court [took] defense counsel's statement to be a request to absent himself temporarily during voir dire and, accordingly, asked the defendant if he understood that counsel `has requested to absent himself from the courtroom during the time the prospective jurors in your case are being called and questioned about their qualifications to serve.' ... The record does not reflect that the defendant either said or did anything in response to the trial court's questions: `Do you understand the request your attorney has made?' and, `You understand that?' The record reflects only that when the trial court asked him to stand up, `Defendant stands.'
"The District Attorney, however, ... inquired of the Court, `If we do pick a jury and are through with the jury and proceed to trial in his absence or what?' [sic] [Emphasis added.]
"Before the trial court could respond to the District Attorney's question, defense counsel himself responded, ...
Your Honor, I see no reason why the defendant and I could not absent ourselves from the courtroom. I have to prepare an application for writs. I had rather do it in my office and the Court could call me about the verdict. (Emphasis added.)
"Even after hearing defense counsel say that his physical presence in the courtroom was going to have so little effect on the trial that he could just as well be in his office and be informed by telephone of the verdict, the trial court still appears to [have] misunder[stood] the novel and potentially contempt[u]ous intentions of defense counsel. The trial court construed the words of defense counsel as, first, a request for the defendant himself to be absent and then, as a request for a stay pending application for writs to review the denial of the motion for a continuance. The trial court then immediately, without *154 further inquiry, resolved the whole matter to its satisfaction by denying a stay and by ruling that the defendant and his counsel must be `present in the courtroom during the selection of the jury in this case.'
"Immediately after the colloquy ... and a short recess of approximately five minutes, voir dire began. It quickly became evident defense counsel meant what he said. He was not kidding. He was not going to take any part in this trial. The court reporter's note reflects the following:
Only the District Attorney participates in jury selection. Counsel for the defendant does not participate in jury selection at all; does not sit at the counsel table and neither accepts nor rejects any prospective juror.

. . . . .
"Once the jury was selected and the trial itself began, trial counsel was as good as his word. Note the first words spoken by defense counsel after the jury was impaneled and sworn: `Your Honor, we are taking no part in the trial' Again, when it came time to present a defense opening statement he said, `I am not participating in the case.' He made it clear that what he was saying at that time was not being said in defense of his client, but rather, `in my own defense, because it seems very peculiar to a jury, I am sure, and it would probably be very peculiar to any lawyers who might walk into this courtroom to see me sitting idly by while the trial was going on.' In that statement to the jury, he explained that there was `a disagreement between myself and the Court as to whether or not this case should have gone to trial today,' and, because of that disagreement, `I am not going to put on a defense.'
"During the brief period of time occupied by the presentation of the entirety of the evidence in this case, defense counsel neither said nor did anything in defense of his client. He did not object to ... hearsay evidence that a confidential informant had told a deputy that the defendant was `in the vicinity of the DeSoto Junior High School' in his car with about a dozen lids of marijuana waiting for `some people there to sell some marijuana to'. When the thirteen lids of marijuana were offered in evidence and the Court inquired if he had any objection, the court reporter shows, `No answer from Mr. Freeman.' When the prosecutor request[ed] permission to pass the marijuana to the jury and the Court inquire[d] if the defense ha[d] any objection, defense counsel respond[ed] `No statement, Your Honor.' When the first of the two witnesses called by the prosecution was tendered for cross-examination and the Court inquired if the defense had any questions for the witness, the court reporter notes, `No audible answer from Mr. Freeman.' When the State's second witness was tendered for cross-examination, and the court inquired if the defense had any questions, the court reporter notes, `No response from Mr. Freeman.'
"After the State had rested, ... defense counsel told the Court, `Your Honor, at this juncture, and I don't want to say anything that would indicate that I intend to put on any defense based on the factual claim in this case, I would like to move for a directed verdict.'[2] He explained his failure to make any objections in the case, `I don't want the record to look like that I am trying to put on a defense when, in fact, I know none at this point that I could put on.' After argument on this point out of the presence of the jury, the jury was returned and the Court inquired if defense counsel waived the polling of the jury, to which inquiry the transcript reflects, `No response.' Similar notations of no response are made in connection with the verdict of the jury. The defense, of course, made no response to the prosecution summation."
The state argues that the issue presented is one of ineffective assistance of *155 counsel which should be considered in an application for post conviction relief rather than in an appeal, or as in this case, on rehearing. We conclude that the question presented to this Court for resolution is not one of ineffective assistance of counsel. The present record demonstrates clearly that the defendant received no assistance of counsel. As aptly summarized by present defense counsel for the defendant:
All [Brooks] had going for him in the adversary system was a warm body with a license to practice law. Defense counsel did nothing to defend the defendant. The only thing defense counsel did in the presence of the jury was defend himself against criticism for having done nothing in the defense of his client.
This failure of counsel to participate in any way in defendant's trial is a constitutional deficiency discoverable by mere inspection of the proceedings which this Court is entitled to review. La.C.Cr.P. art. 920(1). It is therefore reviewable even if it could not be construed as fairly comprehended by an assignment of error.[3]
A defendant's right to the assistance of counsel is guaranteed by both our state and federal constitutions. U.S. Const. amend. VI; La. Const. art. 1 § 13. The landmark cases of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) set the constitutional standard or mandate involving the right to counsel: "Absent a knowing and intelligent waiver, no defendant may be imprisoned if he was not represented at trial by counsel." State v. McGowan, 359 So.2d 972 at 974 (La. 1978).
At oral argument in this Court, the state argued that the defendant in this case knowingly waived his right to counsel by acquiescing in counsel's non-participation, an intentional trial strategy designed to force a mistrial, or a continuance. Accordingly the state urged that the matter at least be remanded for an evidentiary hearing in that regard.
The burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel falls upon the state. State v. Wisenbaker, 428 So.2d 790 at 793, n. 10 (La. 1983). We might be moved to consider sending the matter back to the district court for an evidentiary hearing if the state could furnish, even by affidavit, some showing of what might be proved at any such hearing. The state has not done so. We cannot speculate about whether the defendant quietly went along with an affirmative effort to build reversible error, or whether his lack of response when his lawyer did nothing was an implied waiver of his right to counsel, when the record affirmatively shows only that the defendant was not represented by counsel.
The situation in which Brooks found himself at trial can be compared with one which would have been presented had his lawyer not appeared for the trial at all. Accordingly, the reasoning of Wisenbaker[4] *156 is applicable by analogy to this case where at 428 So.2d at 793, we said:
If counsel, and not defendant, was at fault for counsel's failure to appear or to give timely notice to the trial court of a conflict in schedule, then sanctions must be taken against counsel, not the defendant. City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). [footnote omitted] [emphasis in original] Counsel's failure to appear cannot be equated with a waiver by the defendant of his right to counsel, unless defendant was responsible for the nonappearance. As this court said in a unanimous decision in the Dees case:
Whatever may have been the court's right to discipline counsel if the present motion for continuance was untimely or ill-founded, the client cannot be penalized, by the loss of his constitutional right to legal representation at his trial, for his lawyer's lapse arising out of a conflict in the lawyer's trial schedule. This conviction, resulting in imprisonment by an unrepresented defendant who had not waived counsel, must be set aside as having been obtained in violation of the accused's constitutional right to the assistance of counsel at his trial. 363 So.2d at 532.
The record in the present case does not establish that defendant's failure to have retained counsel present at the outset of trial was the result of a knowing and voluntary waiver of his right to counsel or of conduct by defendant which might reasonably be deemed to constitute waiver of counsel. (emphasis provided)
Likewise in this case, we find neither a knowing and voluntary waiver of defendant's right to counsel nor conduct by the defendant which might reasonably be deemed to constitute waiver of counsel.
According to the joint stipulation entered into at trial by the two attorneys involved, the change in counsel occurred in the following manner. Defendant had retained one David M. Cohn under a bifurcated fee arrangement: "a fee to represent him up to the point of trial ... and then in the event the matter should go to trial, if he were to keep me in his employment, I quoted him another fee." On August 4, 1981, the last pre-trial hearing, a hearing on the motion to suppress, was held.[5] Cohn assisted defendant on the motion to suppress, but the motion was denied. Prior to that last pre-trial hearing, defendant was sent a letter/reminder that an additional fee was due before attorney Cohn would go to trial. (Trial was scheduled for August 10, 1981.) After receiving the letter, defendant's family sought to secure new counsel. On August 6, 1981, J. Stacey Freeman was retained. On August 7, 1981, attorneys Cohn and Freeman appeared in court, obtaining permission respectively to withdraw and to enroll as counsel. At that time, Freeman requested a continuance, and it was denied.
We do not find in this sequence of events the kind of obstructive behavior on the part of the defendant in the retention of counsel which might cause this Court to find an implied waiver of counsel.[6]
Neither do we find in the sequence of events on the day of trial, as summarized at the outset of this opinion, any *157 express or implied waiver of counsel by the defendant.
On original hearing, we found the denial of the motion for a continuance on the morning of trial before voir dire began, to have been within the realm of a trial judge's discretion. So it was. However at the point thereafter when the questioning on voir dire began and it became obvious that defense counsel was going to do nothing in the way of defending his client, it was the trial judge, not the defendant, who had the statutory duty and inherent power "to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La. C.Cr.P. art. 17. The trial judge was not without recourse at that point.[7]
In Wisenbaker at 428 So.2d at 792, n. 4, we noted three alternatives open to a trial judge when, as in that case, out-of-state counsel failed to appear for trial: (1) "re[quire] defendant to have a Louisiana lawyer enroll of record within a reasonable time; (2) ob[tain] a waiver of counsel, or (3) ap[point] counsel to represent defendant." These options were equally open to the trial judge in the instant case. Admittedly choices one and three would have required the trial judge to grant a continuance, the very action sought and refused at the outset of trial. Possibly, too, as noted in Wisenbaker at 428 So.2d at 793, n. 9, the lawyer's intentional lack of participation was a "ploy to force the continuance and [the lawyer] may be subject to some type of sanction. However, unless defendant was a party to such a plot, he cannot be viewed as having waived his right to counsel." As we have concluded, the record in this case neither suggests nor supports a finding that this defendant was at fault or was party to any ploy to delay the trial.
Furthermore, the trial judge in this case had an additional option not available in Wisenbaker. The non-performing lawyer was in court before the judge. The trial judge could have ordered defense counsel to represent the defendant immediately and actively under penalty of contempt. La.C. Cr.P. arts. 17 and 20 et seq. If the trial judge had found the lawyer in contempt for failure to comply with his order, the judge could then have appointed other counsel to defend Brooks. This too would have forced a continuance, of course. But for the judge to have done nothing in the face of no representation resulted in the defendant's being denied his right to assistance of counsel at trial. That denial of the defendant's right to the assistance of counsel at trial requires a reversal and remand for a new trial.
As we have stated in City of Baton Rouge v. Dees, 363 So.2d 530 at 532 and quoted with approval in Wisenbaker at 428 So.2d at 793: "[w]hatever may have been the court's right to discipline counsel ..., the client cannot be penalized, by the loss of his constitutional right to legal representation at his trial, ..."

Decree
For the foregoing reasons, the defendant's conviction and sentence are reversed and the case remanded to the district court for a new trial.
REVERSED; REMANDED.
NOTES
[1] At the time the continuance was requested, Mr. Cohn testified that he had quoted to defendant's parents both a pretrial fee and an additional fee if the case went to trial. Tr. pp. 58-59. Apparently, defendant's family decided to retain Mr. Freeman once it was apparent that the case would go to trial.
[1] Under the constitutional umbrella of the right to counsel, Brooks was denied the right to present a defense, to confront and cross examine the witnesses against him, and to present evidence, in addition to being denied the privilege of making an opening statement, of objecting to hearsay, and of delivering final argument in summation. His attorney's failure and refusal to participate at trial, then, was a serious matter. For example, there was an instance of trial error involving the admission of hearsay testimony from which the defendant should have been protected by counsel.

Brooks was charged with possession of marijuana with the intent to distribute. The quantity of marijuana of which he was found in possession, it could have been argued, was not so much as to establish conclusively an intent to distribute. At trial and without objection, Deputy Davidson testified that a confidential informant had told him that the defendant was "in the vicinity of the DeSoto Junior High School" in his car waiting for "some people there to sell some marijuana to." With no lawyer participating in the defense of the case, this hearsay testimony came in without objection. It's not being excluded, as it would have been with even a perfunctory objection, gave substance to the state's case which it would not otherwise have had.
[2] As the state noted at the time, a directed verdict is inappropriate in criminal cases. Furthermore, its criminal counterpart, a motion for acquittal, is not available in jury trials. "In a trial by the judge alone the court shall enter a judgment of acquittal ..." La.C.Cr.P. art. 778. (emphasis provided)
[3] Counsel for the defendant on the first hearing of his appeal was J. Stacey Freeman, the very counsel whom Brooks had retained to represent him at trial. Accordingly that counsel neither briefed nor identified the right to counsel constitutional issue for the Court, although Freeman did brief the assignment of error which raised it (Assignment of Error Number One, the denial of a continuance). Therefore while it can be argued with some merit that the constitutional issue was not abandoned, the matter was not squarely presented to this Court on original hearing and consequently was not treated in our original opinion. Present counsel, Wellborn Jack, was enrolled only after this case had been orally argued and submitted to this Court for a decision on December 2, 1983.
[4] In State v. Wisenbaker, 428 So.2d 790 (La. 1983), the defendant had three attorneys, two from Texas and one from Louisiana. On the day of trial, his two Texas lawyers did not appear and his Louisiana lawyer had withdrawn when his fee was not forthcoming. The trial judge denied the defendant's motion for a continuance and ordered the defendant to trial without counsel. This Court reversed, and remanded the case for a new trial, finding no conduct on the part of the defendant which would constitute a knowing and intelligent waiver of counsel.
[5] On original hearing in this case, we gave the date of the motion to suppress hearing as July 10, 1981. July 10, 1981, was the date of the preliminary hearing.
[6] In State v. McGowan, 359 So.2d 972 at 974 (La.1978), we said in dicta that an "implied waiver could conceivably arise in a case where defendant, clearly able to secure retained counsel persists in demanding court appointed counsel and desists from employing an attorney despite a reasonable opportunity to do so." In State v. Wisenbaker, 428 So.2d 790 at 793, n. 10 (La.1983) we also said in dicta

If an accused repeatedly fails to retain counsel for trial, or if he appears without counsel after being clearly and unequivocally warned by the trial court that the case will be tried regardless, such fact may support a finding of waiver. For example, see State v. Jacobs, 271 S.C. 126, 245 S.E.2d 606 (S.C.1978).
[7] In some measure, the trial judge brought this dilemma upon himself by releasing Brooks' former lawyer without ascertaining that the defendant had in his new counsel a lawyer who was prepared to participate in his trial on the merits without a continuance.