J. BRUCE NACCARI, Judge Pro Tem.
The current appeal by Floyd Stewart, stems from an order by the trial court to deny Stewart’s release from the Feliciana *229 Forensic Facility. Stewart was committed to the Facility after he pled not guilty and not guilty by reason of insanity to three counts of aggravated arson and one count of simple arson. On a prior occasion, Stewart requested a discharge from the Facility which was also denied by the trial court. That judgment was upheld by this court in State v. Stewart, 467 So.2d 1324 (La.App. 5th Cir.1985). For reasons which follow, we again affirm the holding of the district court.
The facts of the case as reported in State v. Stewart, supra are provided below:
Floyd Stewart was arrested following a series of fires occurring over a period of time in St. James Parish. Notably, one of the fires for which he was charged was set in the apartment in which he lived with his mother, Eva Stewart, while she was sleeping. Ms. Stewart was not harmed. Following his arrest but prior to trial, Stewart’s counsel moved the court for a stay of proceedings pending the results of two psychiatric evaluations. The court granted the stay and the two evaluations were made and filed into the record. Shortly thereafter, Stewart entered his plea and was committed to the facility on April 5, 1982. The psychiatrist’s reports and evaluations have been submitted to the trial court which committed Stewart and they now form part of the instant record.
Shortly after admittance, Stewart was diagnosed as having a number of problems: Poor impulse control, anti-social personality (which cannot be cured), epileptic seizures which must be treated with medication, a lack of insight into personal problems as well as refusal to accept responsibility for wrongful actions, homosexuality, borderline intelligence, and a history of drug and alcohol abuse. It was noted by one of the treating physicians that alcohol combined with certain frustrating events related to defendant’s homosexuality seemed to result in Stewart setting the fires.
Over one year following defendant’s commitment, he petitioned for and was allowed twelve-hour passes restricted to East and West Feliciana Parishes; these passes were later modified to weekend passes and visitation privileges in St. James Parish. The State did not oppose the granting of these passes; however, the State now opposes the relief appellant seeks herein.
Stewart, supra at 1325.
This Court in affirming the district court judgment assigned the following reasons:
We agree with the trial judge that the defendant failed to carry his burden of proof under La.C.Cr.P. art. 657. Although the evidence shows considerable improvement in defendant’s mental condition since commitment, we are of the opinion he has not reached the point of being cured....
There are several factors which lead us to believe the trial judge was correct in not ordering the discharge or release of defendant. First is the fact defendant was not quite cured of his mental problems and that these problems are directly connected to his dangerousness. Included in this factor is the number and complexity of the problems defendant exhibited when he was committed, as described earlier in this opinion. Also of concern is one of the treating psychiatrist’s statements in a progress report that in her opinion, pyromaniacs are recidivist. [footnote omitted] Another persuasive factor, as noted by the trial judge, is that the Superintendent of the facility did not specifically recommend Stewart’s release in the report he made to the court in accordance with La.C. Cr.P. art. 655. Finally, we cannot overlook the serious nature of the crimes committed by defendant. He was accused of setting several fires, one of which involved the apartment where he lived with his mother.
Defendant would like this court to consider only the testimony of Dr. Pennington in reaching its decision. To do this, however, would be contrary to the entirety of the evidence in the record. Our review of the record convinces us the *230 trial judge did not err in rejecting the recommendation of Dr. Pennington and basing its decision on the other evidence present in the record. Such was the case in State v. Rambin, 427 So.2d 1248 (La.App. 2nd Cir.1983), writ den. 433 So.2d 153 (La.1983). In Rambin, the Second Circuit held the trial court did not err in rejecting the recommendations of the psychiatrists who testified at the contradictory hearing, and in finding based on other evidence in the record that defendant presented a danger to himself and others and could not safely be discharged or released on probation.
(Id. at 1326-1327)
The opinion was rendered by this court April 15, 1985. Four months later, on August 26, 1985, the Clinical Director and Chief Executive Officer of the Feliciana Forensic Facility jointly authored a letter to the district court judge stating that Mr. Stewart’s mental condition has stablized without chemotherapy and pursuant to La. C.Cr.P. art. 655 and Jackson v. Foti, 670 F.2d 516 (5th Cir.1982) Mr. Stewart was requesting a contradictory hearing to determine if he should be released or discharged on probation from the Feliciana Forensic Facility. It is noted by this court that the letter again did not specifically recommend Stewart’s release. Following receipt of the letter, the district court judge ordered a hearing which was held October 11, 1985.
At the conclusion of the hearing, the trial court ordered Stewart be recommitted to the Facility. However, the court authorized that Stewart be granted passes based upon the internal control system of the Facility rather than as authorized by the court. The court noted that if Stewart could manage the extended passes without incident over a period of time, the court could make a more informed judgment as to his future behavior if released.
Appellant submits two assignments of error:
(1) Whether or not the Trial Judge was in error when he ruled that Floyd Stewart should not be released or placed on probation from the Feliciana Forensic Facility where he was committed on April 5, 1982 on a “not guilty and not guilty by reason of insanity” plea.
(2) Whether or not the Trial Judge committed reversible error when he refused to allow Trial counsel for the defendant to withdraw from his defense on the morning of the trial when she stated that she was not prepared to conduct a proper hearing on behalf of the defendant Floyd Stewart.
The first assignment of error is based on the contention that the appellant carried his burden of proof, illustrating to the trial court that he is not a danger to himself or others. Appellant’s counsel basis his argument on State v. Collins, 381 So.2d 449, 451 (La.1980) which held:
The evidence in the instant case is convincing that the proper course in the trial court was to release the relator subject to such probationary conditions as would insure his compliance with the prescribed medical regimen. C.Cr.P. 657 allows a committed person an opportunity to prove that he should be released on probation.
In Collins, supra the court considered the fact that the remission had occurred due to the administration of medication of no legal significance, holding that it could not be ignored that the relator at the time of the hearing posed no danger to society or to himself. In the instant case, the psychiatrist stated in his testimony that in certain situations Stewart would be a danger to himself. Each time he was questioned on the issue of Stewart’s dangerousness to others, he continually qualified his opinion that Stewart was not dangerous with the phrase “as a result of mental disease or defect.”
These two cases can be distinguished since the court in Collins, supra considered that although the remission of Collins’ mental disease was accomplished through the continued adminstration of drugs, to ignore the fact that he had nonetheless achieved “synthetic sanity” and was no longer a danger to himself or society *231 would be to disregard the improvements and applications of medical science that can transform patients into contributing members of society. The improvement in his condition was causéd by the very treatment which he was sent to the facility to receive.
In the instant case, there was no testimony to the effect that Stewart was no longer a danger to himself or society with or without the aid of medication. There was no indication that the time Stewart spent in the facility served to reduce his propensity for danger. The psychiatrist could only state that Stewart was not a danger to himself or others “due to mental illness or defect”. In the instant case the trial judge found that the appellant was not, at the time of the hearing, ready to be released from the facility and that he did not carry his burden of proof under La.C.Cr.P. art. 657. That article currently provides the only criterion by which a judge must determine whether or not an insanity acquittee shall be discharged. In pertinent part the article reads:
Art. 657. Discharge or release; hearing
After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person can be discharged, or can be released on probation, without danger to others or to himself, [emphasis added] ■
We find that the trial judge did not err in refusing to grant the appellant a complete discharge or probation from the facility despite the testimony and recommendation of Dr. Pennington, the pyschia-trist who testified on behalf of the appellant. In the instant case, the trial court reviewed the entire record as well as listened to the testimony of the psychiatrist. The trial judge was correct in doing both since the court is charged with assimilating the entire record, not just the testimony of one psychiatrist whose function and desire is to rehabilitate Stewart. Several factors lead this court to believe that the trial judge was correct in not ordering that the appellant be discharged or placed on probation. A careful review of the record illumines the following incidents in which Stewart was involved during the period between contradictory hearings. Each necessitated that the attending psychiatrist write the following negative statements in Stewart’s file:
June 11,1985 “He fails to recognize any Dr. Pennington responsibility for his behavior and has a strong tendency to blame others. He has been involved in a number of incidents during the last week and he refused to acknowledge his involvement. At this point, the staff feels that he is extremely manipulative, an out, and out liar and insighter.”
February 27,1985 “He has had a couple of Dr. Pennington fights with other patients and also some verbal altercations with the security personnel, ...”
February 13,1985 “Floyd stated that there Dr. Yalamanchili was some misunderstanding and finally he got upset, and he hit another patient.... Floyd has very poor impulse control. At times, he exhibits aggressive behavior.”
Two major incidents occurred which indicate to this court the degree to which Stewart is presently dangerous to himself or others. First, on May 22, 1985, upon the discovery that he was fighting with another patient, Stewart threatened to kill himself if he were transferred into another section. The staff was forced to take suicidal precautions when Stewart was moved to another building for his own protection. Second, in December of 1984, while Stewart was home on a pass, Stewart’s mother had to call the Sheriff’s office to arrest Stewart for disturbing the peace. Stewart had had a verbal confrontation with his mother’s boyfriend. At the time of the arrest, the deputy detected an odor of alcohol on Stewart’s breath. While in transit to the police station, the officer twice had to stop his vehicle and request additional police assistance to restrain Stewart as he was kicking the door panel. The officer *232 testified that ultimately Stewart was restrained with seat belts and shackles to keep him from harming himself. These incidents illustrate to this court Stewart’s propensity to be a danger to himself or others which necessitates his recommitment to the Facility in compliance with La.C.Cr.P. art. 657. Stewart, supra.
It is clear to this court that if Stewart cannot appropriately manage daily situations within the confines of the facility to which he has become accustomed and the safeguards provided therein, his pre-exist-ing propensity for dangerousness would certainly be exacerbated by the stressful situations inherent in everyday living outside the facility.
Accordingly, we hold that the trial judge did not err in finding the defendant failed to meet his burden of proof under La.C. Cr.P. art. 657, and that the defendant would present a danger to himself or others if discharged or released on probation from the Facility at this time. Under the order of the district court, Stewart will receive pass privileges from the facility in accordance with their point system. Thus, he will have the opportunity to prove to the district court that he can successfully manage stressful situations and respond more appropriately to everyday living situations.
Counsel for the appellant argues further that the trial judge committed reversible error when he denied the attorney’s Motion to Withdraw and ordered that no continuance would be granted and held the discharge hearing on that same day. The grant or denial of a motion to withdraw as counsel is within the well founded discretion of the trial court. State v. Franks, 284 So.2d 584 (La.1973). The trial court judge was not in error in this case where the trial counsel, Sylvia Steib, was aware that she would not be released from her responsibilities to her client prior to the show cause hearing set as a result of her Motion to Withdraw. The copy of the letter received by Steib from the Director of the Facility requesting a contradictory hearing was dated August 26, 1985. Ms. Steib moved to withdraw as counsel on September 11, 1985 as she had not been compensated for past services. The trial court set the contradictory hearing to determine whether or not Stewart should be discharged from the Facility for September 30, 1985, the hearing was continued at the request of Steib and held October 11, 1985. The judge set the contradictory hearing on the Motion to Withdraw for October 21, 1985.
Ms. Steib was the attorney on this case for approximately four years prior to the most recent contradictory hearing. As a discharge hearing should be held promptly in the interest of judicial efficiency, it would have been more prejudicial to the appellant to have to acquire new legal counsel for this hearing than for Ms. Steib to be required to represent him. Thus, there was no prejudice to Ms. Steib. This court now looks at whether the trial court’s refusal to grant Ms. Steib’s request to withdraw was prejudicial to the appellant.
The District Attorney, anticipating defense counsel’s motion to withdraw on the day of the contradictory hearing, had subpoenaed all necessary witnesses on behalf of the defendant. Defense counsel did not request, or complain of the absence of any other witnesses or documents which would have been subpoenaed on behalf of the defendant, either at the hearing or on appeal. We are cognizant of the fact that Ms. Steib had represented the appellant in this matter from December, 1981 until she requested to withdraw as counsel in late 1985. She should have been very well acquainted with all facts in the case, and the trial court judge did allow her an opportunity to review the most recent medical records prior to the start of the hearing. In withdrawing from the attorney — client relationship, the attorney unquestionably owes a duty to the client he has represented not to waive any substantial right or do any other act, by assuming authority under his prior representation, which would be contrary to the interests of his former client. Sterling v. Jones, 255 La. 842, 233 So.2d 537 (La.1970). Therefore, Ms. Steib *233 had a duty to her client to be prepared for the contradictory hearing as she was well aware that her motion to withdraw as counsel was not set to be heard until ten days later. Trial judges may refuse to grant a motion for counsel to withdraw until another lawyer has been retained by or appointed for the defendant. State v. Wisenbaker, 428 So.2d 790 (La.1983).
The trial court stated that if in the alternative Ms. Steib were requesting a continuance, that motion was denied also. The granting or denying of a motion for a continuance is discretionary. La.C.Cr.P. art. 712. Denial of a motion for a continuance is not reversible absent a showing of prejudice, and when the motion is grounded on insufficient time to prepare a defense, preparation time must have been so short as to undermine the basic fairness of the proceedings. State v. Robinson, 423 So.2d 1053 (La.1982); State v. Haarala, 398 So.2d 1093 (La.1981); State v. Cochran, 463 So.2d 30 (La.App. 5th Cir.1985).
A careful review of the hearing transcript indicates to this court that Ms. Steib was competent as counsel at the contradictory hearing and the appellant was not denied any constitutional rights or due process and equal protection under the law.
Finally, counsel argues, for the first time on appeal, that the short time period of the notice of the hearing violated the provisions of La.C.Cr.P. art. 657 which states “[njotice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing.” In the instant case, the court notes that the letter from the facility requesting a contradictory hearing was dated August 26,1985. A copy of this letter was sent to Steib and the District Attorney, thus meeting the requirements of La.C.Cr.P. art. 657, as the hearing was held October 11, 1985 and more than thirty days had passed. This argument lacks merit.
AFFIRMED.