MOORE, J.
_JjThe defendant, Conner Ray Brown, was convicted by a jury of one count of second degree murder, a violation of La. R.S. 14:80.1. The trial court sentenced Brown to the mandatory term of life imprisonment at hard labor without parole, probation or suspension of sentence. The defendant obtained an out-of-time appeal. The defendant’s appellate counsel filed a motion to withdraw, together with a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), alleging that there are no nonfrivolous issues upon which to base an appeal. For the following reasons, we affirm Brown’s conviction and sentence and grant counsel’s motion to withdraw.
FACTS
Conner Ray Brown and Ms. Etta Thomas lived together in a home on Ellison Street in Shreveport, Louisiana. At about three a.m. on January 16, 2010, Brown’s neighbor, Terry McCain, heard a loud knocking on his front door. The defendant identified himself to Mr. McCain, who then opened the door. McCain said that Brown appeared to be crying and said, “I F’ed up, T ... I killed her.” When McCain asked who, Brown responded, “My old lady.” McCain explained that Brown told him “it’s the third time she pulled out the gun, and they wrestled the gun and it went off.” McCain did not see any injury to Brown or observe any blood on Brown’s clothing.
Mr. McCain suggested that Mr. Brown call 911. Initially, Brown said “No, T, it’s not that bad ... I grazed her.” Later, Brown said “she is bleeding bad” and finally called 911 using McCain’s cell phone. A recording of the call was introduced into evidence. Brown was heard saying pthat he shot Ms. Thomas, saying that he killed her while wrestling over the gun; he also said, “Fuck it, I killed her.”
*720 When the Shreveport police arrived, the first responding officer, Officer Isaac, gained entry to Brown’s house and saw “blood everywhere” but noticed that “it looked like the blood was dried up for a while.” The officer also did not see any blood on Brown, nor did Brown appear to be injured. The officer found Ms. Thomas’s body on the floor with her head propped against a couch; she was dead from gunshot wounds. An investigating officer, Corporal Farquhar, located a 9mm Heckler and Koch pistol in the home near the body; the pistol was empty, and its magazine was disassembled in pieces on the floor. At trial, Corporal Farquhar also identified and explained the contents of the photos taken at the crime scene by another crime scene investigator, Corporal J. King, including photos of the residence, the victim, blood pools and spatters on the walls, bullet holes and shell casings. He testified that the defendant did not appear to be intoxicated either by appearance or by speech, although the officer said he did smell a slight odor of alcohol. Police also discovered a bloody set of men’s clothes in a back bedroom.
The autopsy performed by Dr. James G. Traylor Jr., a forensic pathologist, revealed that Ms. Thomas had been shot six times. Three of the bullet entrance wounds were in the back, including two entering in the back of her left shoulder, one of which entered at armpit level and severed the brachial artery (causing the victim to bleed to death in 10 minutes or less). A third entry wound was located on the upper back just below the neck. |sThe other bullet wounds included one that entered the back of the victim’s right hand fired from 6 to 18 inches, one that entered her left inside forearm and one that entered the right side of her cheek. Dr. Traylor speculated that the wound to the back of the right hand and her right cheek could have been from the same shot, but there was no way to tell definitively. The victim also suffered a blunt injury to the right side of her head possibly caused by being struck by the pistol.
A grand jury indicted Brown on February 25, 2010, charging him with the second degree murder of Etta Thomas on January 16, 2010. The court ordered a sanity commission, and the two physician members concluded that the defendant could understand the charges and assist in his defense. The court found him competent to stand trial. Trial was conducted in November 2011.
During jury selection, defense counsel exercised 12 peremptory challenges against Caucasian jurors, and the state complained that the challenges were race-based in violation of Georgia v. McCollum, 505 U.S. 42,112 S.Ct. 2348,120 L.Ed.2d 33 (1992). The defendant and the victim were both African-American. The trial court required defense counsel to submit reasons for the challenges. During argument on the issue, counsel stated:
Well, if the corrective measure is to give me the three worst prejudicial people from the first ... panel as a cure to effect of the default or the defect in the selection of the jury, then it’s obviously meant to scure [sic ] my client. It doesn’t punish me personally. Perhaps it, you know, distresses me to some degree, but I’m old enough and strong enough to get over that. But in the end I’ve failed my client in this voir dire situation, and truthfully I probably gamble too much on trying ]4to reach the last three potential black folk people that were on the panel. And now if I’ve got it right in my head I don’t think we have a black juror assisting with this white jury in any sense whatsoever, and I think the punitive nature of the curative effect is extremely prejudicial to the *721 well-being of my client. And I think it falls heavily on me and frankly borders on ineffective assistance of counsel, and I don’t know what to say. I am sorry that I perhaps rolled the dice too hard to get the last three.
Court: The last three what?
Counsel: The last three potential black jurors. And as a consequence my client will suffer, and I’ll have to suffer along with it, I guess.
The trial court ultimately agreed with the state’s position that the defense challenges to the white jurors were not race-neutral and reseated three white jurors. The final jury seated was composed of five white males, five white females, one black male and one black female. The two alternates were a white female and a white male.
After the jury was selected, the state presented the evidence and testimony of Terry McCain summarized above, testimony from the officers of who responded to the scene, as well as forensic testimony identifying the gun, and autopsy testimony from Dr. Traylor.
The defendant elected to testify at trial. He explained that the shooting occurred after he and the victim had an argument about his involvement with another woman. He claimed that the victim retrieved the gun from where it was stored and pointed it at his head, at which point he grabbed her hand that held the gun and turned it toward her. He said, “The gun went off. The gun shot.” He claimed that shot struck the victim in the face, and during the ensuing struggle, the victim was shot two more times. |fiBrown testified that he then gained control of the gun, then he and the victim again began to struggle, and the gun went off two more times.
The defendant further testified that he had “no idea” that the victim was bleeding and said, “Actually, I didn’t think none of the shots had really hit her” because “you couldn’t see no blood or nothing like that.” Later, he testified that the victim actually shot herself all six times, including the three shots in the back.
The jury rejected the defendant’s version of events and unanimously convicted him of second degree murder. As noted, the district court imposed the mandatory life without benefits sentence, and the defendant did not take a timely appeal. On post-conviction relief, the district court granted Brown an out-of-time appeal. Brown’s appointed appellate counsel filed a motion to withdraw and an Anders brief stating that there were no viable issues to raise on appeal. The brief outlines the procedural history and facts of the case. The brief also contains “a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.” State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, 242. Defense counsel further verified that he mailed copies of the motion to withdraw and his brief to the defendant, in accordance with Anders, supra; Jyles, supra; State v. Mouton, 95-0981 (La.4/28/95), 658 So.2d 1176; and State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990).
In his brief, appellate counsel suggests that Brown has a colorable ineffective assistance of counsel claim which would be best presented in an ^application for post-conviction relief. On April 25, 2018, this court issued an order holding the motion to withdraw in abeyance, rescinding the pro se briefing deadline, and notifying Brown that he could file a brief within 30 days of the date of the order and file a request to view the appellate record within 10 days of the date of the order. This order also directed appellate counsel to file a supplemental brief addressing the issue of ineffective assistance of counsel. Brown *722 objected to his counsel’s motion to withdraw.
Counsel supplied this court with a short supplemental brief explaining that any potential claim of ineffective assistance could not be decided upon the appellate record but could only be resolved after an eviden-tiary hearing to develop the facts. In the meantime, Brown has filed several lengthy, mostly handwritten, pleadings with this court in the nature of appellate briefs; all of these pleadings complain generally of ineffective assistance of trial counsel, especially in regard to issues related to defendant’s mental and physical health.
In opposition, the state has presented an exceptionally detailed and well-drafted statement of the facts and a close examination of trial counsel’s performance. It urges this court to reject, on appeal, any potential claim of ineffective assistance.
This record shows no errors patent, and appellate counsel’s assertion that there appear to be no nonfrivolous issues to raise on appeal appears to be well-founded. The evidence was plainly sufficient to convict the defendant; the state proved beyond a reasonable doubt that Brown shot the victim multiple times, including three shots in the back, and his testimony |7was plainly not credible even from the cold record.
Between the briefs of appellate defense counsel and the pro se filings of the defendant, the question of ineffective assistance of trial counsel is essentially the only issue presented to this court on appeal. The law concerning the substance of and procedure for such claims is well settled.
Both the Louisiana and federal constitutions guarantee a criminal defendant’s right to the assistance of counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Brooks, 452 So.2d 149 (La.1984), and our law requires that the assistance be effective. Typically, a defendant must show that his attorney’s performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In some cases, however, a defendant is entitled to relief absent a showing of deficiency or prejudice. Those cases are limited to instances where a defendant is denied counsel at a critical stage of the proceedings, when counsel entirely fails to subject the prosecution’s ease to meaningful adversarial testing and when the circumstances surrounding a trial prevent the defendant’s attorney from rendering effective assistance of counsel. Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. A motion for new trial is also an acceptable vehicle by which to raise such a claim. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La. App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Willars, 27,394 (La.App. 2 Cir. 9/27/95), 661 So.2d 673.
State v. Taylor, 44,367 (La.App. 2 Cir. 9/23/09), 20 So.3d 1157. Typically, ineffective assistance claims raised on appeal are either deferred |sto post-conviction relief *723 or, when the record permits, decided on the merits. In some extraordinary instances, this and other appellate courts have taken a third approach on appeal and remanded an ineffective assistance claim for an evidentiary hearing. The Taylor case above is one such instance; in that case, a defendant who was represented by counsel was convicted of simple burglary. Thereafter, the defendant began representing himself and filed a motion for new trial urging that he had received ineffective assistance of counsel. Specifically, the defendant argued that certain physical evidence was not scientifically tested despite his request to his trial counsel that DNA testing be done. During a post-trial hearing, the district court made several disparaging statements about defense counsel’s performance, including “your lawyer is not representing you,” “I know that this is coming back because you don’t have competent counsel. You don’t have effective assistance of counsel. He hasn’t helped you,” and “all I’m trying to do is make a record for appellate purposes to show you did not have effective assistance of counsel.” However, the district court denied the defendant’s motion for new trial without a hearing. On appeal, this court held that the district court should have held a hearing on the motion for new trial rather than summarily denying the motion, so this court remanded the case for a hearing on that motion.
In the instant case, the defendant’s trial counsel used the phrase “ineffective assistance of counsel” referring to himself during argument on the McCollum challenge. It appears that counsel was vocalizing his unhappiness with his inability to have additional African-Americans seated |flon the jury. Of course, McCollum prohibits purely race-based peremptory challenges, so counsel’s goal could not have been achieved with the race-based procedure he tried to employ. Nevertheless, counsel’s failed effort to seat additional African-American jurors in this case does not meet the requirements of Strickland v. Washington to establish an ineffective assistance of counsel claim.
Appointed appellate counsel has not specifically briefed any particular instance of ineffective assistance of counsel, and the defendant’s several pro se filings are disjointed and confused, containing largely irrelevant assertions. Because there is no clear legal argument on appeal challenging any of trial counsel’s actions, we are reluctant to consider any of the ineffective assistance of counsel assertions raised by the defendant in his pro se filings on appeal.
However, we do not think remand to the trial court for appointment of counsel and a hearing is appropriate in this case. Unlike Taylor, supra, there is no motion for new trial complaining of ineffective assistance. In addition, there are no statements in this record by the trial court flatly accusing trial counsel of ineffective assistance. A review of the trial transcript shows that defense counsel vigorously represented the defendant and tried a strategy, among others, to suggest that perhaps the gun malfunctioned and caused the victim’s injuries. Apart from some evidentia-ry rulings against the defendant where trial counsel was trying to introduce evidence that he should have known was inadmissible hearsay, there is little, if any, evidence of counsel’s lack of competence. Indeed, lleven the evidentiary issues just mentioned may have been trial strategy to try to imply to the jury that there may be other facts, favorable to the defendant, that they were not allowed to hear.
We conclude that deferring Brown’s ineffective assistance claims to post-conviction relief provides him the best vehicle to present such claims with the burden of proving that he is entitled to relief, or at *724 least a hearing where new counsel could represent him.
CONCLUSION
For these reasons, we grant appellate counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. We expressly defer consideration of whatever ineffective assistance claims defendant may have to post-conviction relief procedure in accordance with La. C. Cr. P. art. 924 et seq.
CONVICTION AND SENTENCE AFFIRMED.