576 So.2d 520 (1990)
STATE of Louisiana
v.
Lynell DESDUNES.
No. 88-KA-0142.
Court of Appeal of Louisiana, Fourth Circuit.
October 4, 1990.
Writ Granted and Transferred November 16, 1990.
Rehearing Denied April 10, 1991.
*522 Harry F. Connick, Dist. Atty., Beryl McSmith, Daniel A. Claitor, Asst. District Attys., New Orleans, for plaintiff/appellee.
Elizabeth W. Cole, Supervising Atty., New Orleans, for defendant/appellant.
Before GARRISON, BARRY and BECKER, JJ.
Writ Granted and Transferred to Court of Appeal, Fourth Circuit, November 16, 1990.
BARRY, Judge.
The defendant was charged under several bills of information with 73 counts of forgery which include 69 counts which relate to 35 checks drawn on a closed Regency Motors, Inc. account, payable to Lynell Desdunes and signed Armand Miller III. Two counts relate to one check drawn on *523 the same account and signed by Armand Miller III, but payable to John Bland. The other two counts are on an altered Hyatt Regency payroll check. The defendant was also charged with possession of cocaine.
The defendant was found guilty of attempted forgery as to all of the forgery counts except the two relating to the Hyatt Regency check. The defendant was found guilty as charged on the Hyatt Regency payroll counts and the possession of cocaine charge. The trial court vacated the issuing and transferring count of the conviction for each check since the defendant could not be found guilty on both counts.
The defendant was sentenced to five years on each of the attempted forgery convictions (based on the false making counts), ten years on the forgery conviction and five years on the cocaine conviction, with credit for time served. The sentences were to be served without the benefit of probation, parole or suspension of sentence. The sentences on all counts relating to checks presented to a given establishment were grouped in separate bills of information and were made concurrent. The sentences in case numbers 316-795, 315-375, 316-796, and 316-829 run consecutively. All other sentences are concurrent.
The defendant pled guilty to a triple offender bill and was resentenced, based on the enhancement of one count in each case, to the same time on the original sentence, but without benefit of parole, probation or suspension of sentence.
Fifty pro se assignments of error were filed on the forgery convictions, eighteen pro se assignments on the cocaine conviction, and three assignments by appellate counsel.[1]

WAIVER OF RIGHT TO COUNSEL

Pro Se Forgery Assignment 49
The defendant urges that there was no valid waiver of his right to counsel.
Without a knowing and intelligent waiver of the right to counsel, no person may be imprisoned for an offense unless he is represented by counsel at trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The accused may waive his right to counsel and exercise his right to self-representation so long as the record reflects that the waiver of counsel has been knowingly and intelligently made. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Relevant to a determination of whether there has been an intelligent waiver are the facts and circumstances of each case including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Also pertinent to such a determination is the trial judge's assessment of a defendant's literacy, competency, understanding and volition. Faretta, supra.
The choice of self-representation can only be made after the defendant has been made aware of the dangers and disadvantages of self-representation "so that the record will establish that `he knew what he is doing and his choice is made with eyes open'". Faretta, 95 S.Ct. at 2541. The record must also reflect that the defendant's choice of self-representation is clear and unequivocal. State v. Hegwood, 345 So.2d 1179 (La.1977).
The burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel is on the State. State v. Brooks, 452 So.2d 149 (La.1984), concurring opinion 483 So.2d 140 (La.1986). The propriety of granting a defendant the right to represent himself should not be judged by what happens in the subsequent course of the representation; it is the record made in recognizing that right that is determinative. State v. Dupre, 500 So.2d 873 (La. App. 1st Cir.1986), writ denied 505 So.2d 55 (1987).
Though a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. State v. Dupre, *524 supra; see State v. Bodley, 394 So.2d 584 (La.1981), concurring opinion 435 So.2d 421 (La.1983); State v. Boettcher, 338 So.2d 1356 (La.1976). However, when the accused assumes functions that are at the core of the lawyer's traditional role he will often undermine his own defense. Because he has a constitutional right to have a lawyer perform core functions, he must knowingly and intelligently waive his right to assistance of counsel despite the presence of a court-appointed adviser. State v. Dupre, supra.
At the first arraignment the defendant requested that he be allowed to represent himself. The court appointed an indigent defender to "assist him" but allowed the self-representation. The court stated "I think you do so though at great peril to yourself" and noted that the defendant would be held to the rules of evidence and to the law just as though he were an attorney. Throughout the rest of the preliminary hearings the defendant and the court engaged in dialogues concerning the defendant's lack of ability to do certain things which would normally be provided by his attorney. There was also discussion concerning the defendant's apparent belief that he was entitled to represent himself in addition to having counsel to "assist" him. The defendant expected the public defender's office to provide him with research and investigative services. Throughout all of the proceedings the defendant continuously asserts that he wishes to represent himself.[2]
The record convinces us that the defendant's waiver of counsel was made intelligently and voluntarily and that his decision to represent himself was clear and unequivocal. Throughout the pre-trial hearings the court and the defendant discussed the drawbacks and the risks inherent in the defendant representing himself. The defendant was literate, competent, able to understand what he was waiving and wanted to waive his right to counsel. The defendant's recurring assertion that he was entitled to both represent himself and to assistance of counsel was based on his incorrect legal belief which he maintained despite the trial court's explanations. This assignment has no merit.
Having found a valid waiver of counsel, defendant's assignments 7 and 11 on the cocaine charge and 4, 5, 6, 22, 40, 41, 42 and 50 on the forgery charge, all relevant to ineffective assistance of counsel, are pretermitted.

SUFFICIENCY OF THE EVIDENCE

Pro Se Forgery Assignments 9, 10, 17, 18
The defendant urges that the evidence was insufficient to support his convictions.
The standard of review for sufficiency of the evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt the essential elements of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Forgery is defined as:
[T]he false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
Whoever commits the crime of forgery shall be fined not more than $5,000.00, or imprisoned, with or without hard labor, for not more ten years or both.
Forgery is committed by acting with an intent to defraud to either (1) make or alter a signature or another part of an instrument, or (2) issue or transfer an instrument known to be forged. In either instance the State must prove a general intent to defraud. State v. Raymo, 419 So.2d 858 (La.1982). La.R.S. 14:10(2) provides that
General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human *525 experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
The intent must be to injure or prejudice the rights of another, but neither actual injury nor prejudice to the particular person intended to be defrauded need be shown. Raymo, supra.
The jury found the defendant guilty under both definitions of forgery, but the trial court vacated the counts for issuing or transferring. Therefore the relevant inquiry is whether there was sufficient evidence to establish that the defendant, with an intent to defraud, made or altered a signature or other part of an instrument.
The defendant maintained that a Hyatt employee had changed the amount on the Hyatt check to correct a tax mistake and that he had received the Regency Motors checks as payment by Armand Miller III for services he rendered to Regency Motors at his mechanic shop.
F.B.I. Special Agent Robert Marshall testified for the defense that he conducted a civil rights investigation regarding an incident "surrounding" the defendant's arrest. Marshall visited the defendant's place of employment and ran a "motion check, an NCIC check" on Armand Miller III. Though Miller's name came up on the computer, there was no criminal background. He determined from his investigation that Miller had worked "as a car dealer in various places throughout the state [of Louisiana]".
Marshall also testified that he went to the site where the defendant claimed to have his mechanic shop and observed "a number of junk cars ... a number of tools, car engines spread out and block and tackle.... It looked to me as if the individual had been employed or doing car work of some kind".
Although Marshall's testimony in a limited way supports some of the defendant's story, that story was contradicted by Detective James La Vergne who testified that the defendant admitted: typing out the front of twelve Regency Motors checks; filling in to whom they were payable, the date and the amount; and signing Miller's name to twelve of the checks. La Vergne also testified that the defendant confessed to altering the Hyatt Regency check from $0 to $201.00. There is ample evidence to support the defendant's conviction for forgery on those checks. The evidence was sufficient to support the forgery conviction as to the Hyatt check and the convictions for the lesser included offense of attempted forgery of the twelve checks the defendant confessed to making. State v. Ford, 473 So.2d 931 (La.App. 3rd Cir.1985), writ denied 477 So.2d 1123 (La.1985).
The rest of the checks were all drawn on the Regency Motors, Inc. account and also signed Armand Miller III. La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Though no expert testified that the Armand Miller III signature on each of the checks was the same, our review of the checks convinces us that the jury could have reasonably concluded they were signed by the same person and that the similarities among all the Regency Motors checks excludes every reasonable hypothesis of innocence of forgery as to the other checks.
The evidence is clearly sufficient to support the defendant's attempted forgery convictions on the remaining checks.

Pro Se Cocaine Possession Assignment 13
The defendant urges that there is insufficient evidence to support his possession of cocaine conviction.
The elements of the crime of possession of cocaine are: 1) knowingly or intentionally 2) possessing 3) cocaine. Officer Timothy Dorsey testified he and his partner, Tyrone Martin, were returning to Central Lock-Up on July 1, 1986 at 1:00 p.m. They were in plain clothes, driving an *526 unmarked vehicle. While stopped for a red light at Claiborne and Orleans they noticed the defendant walk up to James Parker, take money out of his pocket, fold it and hand it to Parker. Parker handed the defendant a small packet containing white powder. The men then slapped hands and the defendant walked away. The officers exited the car and Dorsey grabbed the defendant's right hand which was still in his right rear pocket. Dorsey told him to take his hand out of his pocket slowly. Dorsey opened the fist and found a packet of cocaine.
David Waguespack, NOPD crime lab, stated the powder tested positive for cocaine.
Patricia Johnson, girlfriend of Parker, testified for the defense that she saw the two men shake hands but did not see them exchange money for cocaine.
James Parker testified that as he was leaving a liquor store with a bottle of wine he saw the defendant and the two men slapped hands. They parted and Parker stopped to talk to Johnson. The officers then arrested the men. Parker denied selling cocaine.
Taking the evidence in the light most favorable to the prosecution, a rational trier of fact could easily find, beyond a reasonable doubt, the essential elements of possession of cocaine.
The assignments as to sufficiency of the evidence are without merit.

THE POLICE REPORTS

Pro Se Forgery Assignments 7, 14, 33, 34, 39, 45 Counseled Assignment 1
The defense argues that the trial court improperly denied the defendant access to police reports.
There are two police reports which the defendant complains he did not receive. He claims their relevancy pertains to the confession he allegedly made which was testified to by Detective La Vergne.
There are three bases on which the defendant argues he should have received the reports. First, the defendant cites La.R.S. 44:3(A)(4), as amended by Acts 1984, No. 965 which provides that the initial report of the officer investigating the complaint shall be a public record. Second, the defense urges that the defendant was entitled to the reports based on La.C.Cr.P. Art. 716 which provides in pertinent part:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents of an oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant the court shall order the district attorney to inform the defendant of the substance of any oral statement which the State intends to offer in evidence made by the defendant, whether before or after arrest, in response to the interrogation by any person then known to the defendant to be a law enforcement officer.
The defendant also relies on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) because the reports contain evidence favorable to his defense.
This Court requested copies of the reports and made them part of the record because the confession to which Detective La Vergne testified is crucial as to whether there was sufficient evidence to convict. Our review of the reports shows that they mirror the testimony of Detective La Vergne and do not contain Brady material.
Assuming that the defendant was entitled to the reports either as an initial report or as notification of the contents of an oral statement under C.Cr.P. Art. 716, we find there was no prejudice by withholding the statements. At the preliminary hearings the defendant had been completely apprised of the contents of his statement, when it was made and to whom it was made.
These assignments have no merit.

*527 SUBPOENA DUCES TECUM

Pro Se Forgery Assignments 8, 13
The defendant argues he should have been allowed to question the officer from the police record room who delivered the police reports in response to his subpoena duces tecum.
The defendant argues he wanted to examine the officer concerning the police reports. As discussed previously, even if the defendant was entitled to the reports the evidence was admitted through Detective La Vergne's testimony and the reports do not contain Brady material. If there was error, it was harmless.
The defendant also complains that the trial court refused to recess the case until his subpoena duces tecum could be served on Paul Mitchell, Director of the City of New Orleans Finance and Revenue Department. He requested that the subpoena be served so that he could prove that Regency Motors did not close in December, 1984 as was testified, but was open in 1986 when he allegedly operated his mechanic shop.
The trial court ordered that the subpoena be served but refused to recess trial, finding: that he had given the defendant every opportunity to defend himself, including full subpoena power; that the defendant should have prepared his case before trial; and that the court was unwilling to recess trial indefinitely.
We note that, considering the confessions which were introduced, the inability to procure such records was harmless.

BILLS OF INFORMATION

Pro Se Forgery Assignments 29, 30, 44
The defendant first complains that as to case 317-600, counts 5 and 6 are duplicitous of counts 7 and 8 because they charge forgery of non-enumerated checks dated the same day for the same amount of money. We again note that two of those counts were vacated by the trial judge. As to the remaining two counts the only distinctions among all but one of the checks drawn on the Regency Motors account are the amount and date. The issue is whether the two counts were on the same check. Our inspection of the checks shows two checks for the same amount with the same date. The counts are not duplicitous.
Next, the defendant complains that the bills of information are defective because they fail to state the method of forgery and do not contain check numbers for each check.
If the sufficiency of an indictment or bill of information is not questioned at trial, the pleading is sufficient unless it is so defective that it does not, by any reasonable construction, set forth an identifiable offense and inform the defendant of the statutory basis of the offense. State v. Storms, III, 406 So.2d 135 (La.1981).
The defendant raises this issue for the first time on appeal.
A reading of the bills reveals that each bill contains the date, amount, payee, signatory and bank's name. Each bill clearly sets out that the State intended to proceed under both methods of forgery as provided by the statute and inform the defendant of the basis of the offense.
These assignments have no merit.

MOTION FOR NEW TRIAL

Pro Se Forgery Assignments 19, 20, 38
The defendant argues that the trial court should have granted his motion for new trial. The motion was based on: sufficiency of the evidence; the defendant was not given police reports relating to his September 19, 1986 arrest and confession; and newly discovered evidence (the records of Regency Motors sought from the City Finance and Revenue Department).
We previously discussed those issues and conclude the trial court properly denied a new trial.

MOTION TO SUPPRESS THE EVIDENCE

Counseled Assignment 3

Pro Se Cocaine Possession Assignment 15
The defendant argues the trial court erred by denying his motion to suppress the evidence.
*528 The defendant was not formally placed under arrest until after the cocaine was seized from him. However, as the Louisiana Supreme Court stated in State v. Raheem, 464 So.2d 293 (La.1985): "An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest." Raheem, 464 at 296; State v. Junegain, 478 So.2d 542 (La.App. 4th Cir.1985), writ denied 483 So.2d 1018 (La.1986). Although the defendant was not placed under arrest until after the cocaine was seized from his hand, the officer approached the defendant and forcibly opened his hand to determine whether it contained drugs. At the time the officer detained the defendant and began searching his hand, the officer had "effected an extended restraint" on the defendant and he was effectively under arrest.
"A search performed incident to a lawful arrest has long been recognized as an exception to the warrant requirement." State v. Wilson, 467 So.2d 503, 517 (La.1985), cert. denied Wilson v. Louisiana, 474 U.S. 911,106 S.Ct. 281, 88 L.Ed.2d 246 (1985); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In order for such a search to be valid, the State must prove that probable cause existed for the defendant's arrest. State v. Wilson, supra. "Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime." Wilson, 467 So.2d at 515. See also State v. Ruffin, 448 So.2d 1274 (La.1984).
Here, the officer saw the defendant in a high drug area when he exchanged money for a small packet containing a white substance. The offense was committed in full view of the police. There was probable cause to arrest. La.C.Cr.P. Art. 213.
These assignments have no merit.

MULTIPLE BILL

Counseled Assignment 2
The defense urges that the defendant was not advised of his right against self-incrimination at the multiple bill hearing.
Before accepting a plea of guilty at a multiple bill hearing, the trial court must inform the defendant that he has a right to remain silent and he cannot be forced to testify against himself. State v. Desmond, 524 So.2d 147 (La.App. 4th Cir.1988); State v. Firmin, 522 So.2d 1181 (La.App. 4th Cir.1988), writ denied 532 So.2d 759 (La. 1988). The defendant complains that he pled guilty before he was advised of his rights. However, the multiple bill transcript specifies that the trial court did not accept the plea until after the defendant was advised of his rights. This assignment has no merit.

Pro Se Forgery Assignment 46
The defendant urges that he was promised good time in his multiple bill sentence. Since he is ineligible for good time under La.R.S. 15:571.3, he contends his plea to the multiple bill should be set aside.
The transcript reveals that the trial judge did not promise the defendant good time. This assignment is without merit.

Pro Se Forgery Assignment 47

(Filed September 21, 1988)
The defendant urges that it was illegal to multiple bill him on one count within each bill of information because the conviction on each forgery bill of information was entered on the same day. See State v. Sherer, 411 So.2d 1050 (La. 1982).
The reasoning of Sherer does not extend to separate offenses committed on different dates and charged under separate bills of information. State v. Norwood, 538 So.2d 682 (La.App. 4th Cir.1989). The enhanced convictions in this case are separate offenses committed on different dates and charged under separate bills of information. This assignment has no merit.

*529 SENTENCES

Pro Se Cocaine Possession Assignments 5, 6
The defendant claims the trial court abused its discretion by failing to inquire as to inaccuracies in the pre-sentence report. The defendant says he did not see the report, but somehow argues that the report "was likely to contain erroneous, false information, and did not contain favorable information ... that could be used in mitigation."
Our review of the pre-sentence report shows that it contains favorable information which could be used in mitigation. The sentencing transcript reflects that the court read the letters written by defendant on his own behalf and personally spoke to the defendant's brother.
Most importantly, the sentencing transcript tells us that the defendant examined the report with Mr. Bertel prior to sentencing. Mr. Bertel expressed the defendant's opinion that the defendant was "not technically a third offender". The defendant then acknowledged he had nothing more to say about the report. The trial court went on to describe much of the contents of the report, including favorable information.
The record clearly shows that the defendant reviewed the report prior to sentencing and failed to complain of any errors. These assignments lack merit.

Pro Se Forgery Assignments 11, 37

Pro Se Cocaine Possession Assignment 2
The defendant submits that his sentences on the forgery convictions are excessive and that his sentence of five years for cocaine possession is severe compared to the suspended two years which he claims his co-defendant (prior to severance) was sentenced. The defendant alleges that the co-defendant also had a prior conviction. The docketmaster shows that the co-defendant was put on five years active probation with substantial conditions.
The Louisiana Constitution prohibits excessive punishment. Art. I, § 20. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment and that right is enforceable on appellate review. State v. Cann, 471 So.2d 701 (La.1985); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir. 1987).
A sentence is excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering". State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983).
A trial judge is given wide discretion in imposing sentences within statutory limits and the sentence should not be set aside as excessive absent manifest abuse of discretion. Cann, 471 So.2d 701 (La.1985). The trial judge must articulate reasons for an apparently severe sentence and tailor it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981).
La.C.Cr.P. Art. 894.1 sets forth the criteria for sentencing. The trial court need not articulate every cited circumstance, but must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981), cert. denied Guiden v. Louisiana, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). Both the aggravating circumstances and the mitigating circumstances must be considered, State v. Franks, 373 So.2d 1307 (La.1979), and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La.1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
*530 A review of the transcript convinces us that the trial judge complied with Article 894.1
Once adequate compliance with Art. 894.1 is found, the court must look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of the defendant's case, keeping in mind that the maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Davis, 485 So.2d 981 (La.App. 4th Cir. 1986), writ denied 488 So.2d 1019 (La. 1986).
Even though co-defendants convicted of the same crime need not be sentenced equally, even where they come from similar backgrounds and might be similar in other respects, a disparity of sentences is another factor to be weighed in assessing an excessiveness claim. State v. Smith, 433 So.2d 688 (La.1983).
In State v. Berthelot, 513 So.2d 1228 (La.App. 4th Cir.1987), this Court found consecutive sentences of ten years on each of two counts of forgery not excessive. (The facts of the case involved a well planned scheme to obtain a job where the defendant could sodomize mentally retarded adults.) The Supreme Court modified the sentence to have the counts run concurrent. State v. Berthelot, 516 So.2d 127 (La.1987). In State v. Francis, 482 So.2d 154 (La.App. 4th Cir.1986), a sentence of fifteen years at hard labor for forgery by a second offender was not excessive where the defendant had a reckless disregard for the law and did not present any factor that would warrant a lesser sentence. In State v. Conger, 526 So.2d 431 (La.App. 4th Cir. 1988), a sentence of eight years for forgery by a triple offender was affirmed. The Court noted there was no mitigating circumstance which could justify a lesser sentence.
In this case the defendant was sentenced on thirty-five counts of attempted forgery, one count of forgery, and one count of possession of cocaine. The facts establish a continuing scheme of forgery through a situation that suggested the defendant was an unknowing participant. The facts show that he had a premeditated plan to take advantage of business establishments throughout the city by obtaining cash from forged checks. The record suggests the defendant had a cocaine problem.
As a triple offender the defendant could have received up to 240 years. His 20 year sentence is not excessive.

Pro Se Cocaine Possession Assignment 4
The defendant argues the sentence was excessive because the court incorrectly found that he was a drug user. This argument is specious in light of the fact that he was convicted for possession of cocaine and, at the sentencing hearing, he argued that his problems had been caused by drug use.

PHOTO LINE-UP

Pro Se Forgery Assignment 31
The defendant urges that the photo lineup (317-058) was suggestive.
The line-up was used to identify the defendant as the person who cashed several checks at Ideal Food Store, a fact never disputed. Since that fact was never disputed and the issuing or transferring counts on all the checks were vacated, this assignment is moot.

REMAINING ASSIGNMENTS
Pro se assignments 10, 12 and 14 on the cocaine possession conviction and 2, 3, 21, 23, 24, 25 and 43 on the forgery convictions are not considered. Those assignments urge that the defendant was beaten by detectives and deprived of access to: a law library, books brought by his family, an investigator, paper, and to papers in his holding cell prior to trial. The facts surrounding these allegations are not all in the record. The allegations may be raised by post-conviction application.
Pro se assignment 3, 16, 17, and 18 on the cocaine possession conviction and 26, 27, 28, 35, 36 and 37 on the forgery convictions *531 have not been briefed and are deemed abandoned.
By pro se assignment 8 on the cocaine conviction, the defendant urges he had an inadequate amount of time to prepare for trial. He claims the preliminary hearing took place on February 12, 1987 and at that time he requested the transcript of his codefendant's trial and of that day's hearing. On February 25, 1987 he received the transcripts and was granted a one day continuance to review the material.
While one day may appear to be a short period, the defendant makes no argument that the transcripts were voluminous or, more importantly, how he was prejudiced by having one day for review. He does not show how more time would have helped his defense. This assignment lacks merit.
By pro se assignment 9 on the cocaine conviction, the defendant argues the State knowingly used perjured testimony that (1) his co-defendant "used his crippled and paralyzed hand to reach into his pocket to give defendant the drug" and (2) officers were 15-20 feet away when they witnessed the defendant engage in a drug transaction when earlier testimony indicated they were 120 feet away.
There is nothing to support the defendant's contention regarding the co-defendant's physical condition or, more importantly, that the State had any awareness of that alleged condition.
A review of the preliminary hearing indicates that the earlier testimony was that the officers were 20-30 feet away. There is no testimony by the officers that they were 120 feet away.
This assignment lacks merit.
In a confusing argument in pro se forgery assignment 32, the defendant claims the State failed to turn over exculpatory material consisting of a statement he made to Detective Cassanova which Cassanova testified to at a preliminary hearing.
Cassanova testified at the preliminary hearing that the defendant told him that he worked for a company fixing automobiles, that the checks were payment for services, that he had endorsed the back of both checks which he presented to Richard's Grocery Store, that he had cashed the first one, and attempted to cash the second one. As such, the defendant was apprised of the exculpatory statement.
The defendant also seems to complain that the State acted in bad faith when it accepted "perjured" trial testimony from Cassanova. Specifically, the defendant argues that Cassanova testified that the defendant admitted using a typewriter and signing the name Armand Miller.
The State has no control over whether a witness commits perjury. The trial transcript shows that Cassanova never testified that the defendant used a typewriter or that he admitted signing the name Armand Miller. On the contrary, Cassanova's testimony was exactly the same as his testimony at the preliminary hearing. The defendant tried to impeach Cassanova by establishing that he made a prior inconsistent statement, but was unable to show any discrepancy.
The defendant also urges prejudice by a witness who said the checks were returned marked "Forgery" when they were marked "NSF" or "Account Closed." Considering the overwhelming evidence that the checks were indeed forged and that the jury was able to view the checks, there was no prejudice to the defendant.
This assignment has no merit.
By pro se assignment 12 on the forgery conviction, the defendant argues the trial court erred in not allowing the jury to view defense exhibits 1, 7, 8, 9, 13, 14 and 15. The record indicates that defense exhibits 8, 14 and 15 were not allowed into evidence and the defendant makes no argument that the ruling was error. Exhibit 9 was not offered into evidence. The jury was allowed to view the rest of the exhibits. This assignment has no merit.
By pro se assignment 15 on the forgery conviction, the defendant urges that he should have been allowed to use charts to explain his position regarding the Hyatt payroll check because the documents, reproduced from microfilm, were too small. The defendant states by brief that the *532 "charts contained all of the information that had already been put into evidence by the State." Inability to use the charts was not prejudicial. This assignment has no merit.
By pro se forgery assignment 16, the defendant claims jury tampering. He states that during jury deliberation the judge went into his holding cell twice and informed him the jury wanted to view the evidence again. The defendant was taken into the courtroom on both occasions.
Those occurrences were not transcribed, but based on the defendant's narrative, the procedure was proper. He does not explain what constituted jury tampering. This assignment has no merit.
As to pro se assignment 47, filed June 16, 1989, the defendant urges that he has been denied due process because of the length of time required to complete his appellate record. This case has numerous bills of information and counts and an extraordinary number of assignments. Transcripts and documents from the multitude of proceedings were prepared and completely reviewed. There has not been a due process violation. To the contrary, this defendant will never know and certainly not appreciate the tedious and thorough appellate review he has received, despite the number of unfounded assignments.
By pro se assignment 1 on the cocaine possession and on the forgery convictions, the defendant requests review for errors patent. There has been a thorough review of the record and there is one.
The record indicates the defendant was sentenced as a triple offender without benefit of parole, probation or suspension of sentence. The predicate offenses for cocaine possession and forgery do not allow sentences to be served without the three benefits. The explicit denial of probation and a suspended sentence does not require an amendment of sentence since it was within the court's discretion to give those benefits. The trial court did not exercise its discretion.
The trial court does not have the discretion to deny this defendant parole eligibility. His parole eligibility is to be determined by the Department of Corrections pursuant to La.R.S. 15:574.4. See State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). The denial of parole eligibility must be deleted.
The defendant's convictions are affirmed. His sentences are amended to delete the denial of parole eligibility and as amended are affirmed.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED.
NOTES
[1] While there is no assignment numbered "48", there are two assignments numbered "47".
[2] Excerpts of the relevant hearings are attached in an unpublished appendix.