729 So.2d 1101 (1999)
STATE of Louisiana
v.
Daniel C. SULLIVAN.
No. 97-KA-1037.
Court of Appeal of Louisiana, Fourth Circuit.
February 24, 1999.
*1103 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Marion B. Farmer, Farmer And Burns, Ltd., Covington, LA, Counsel for Defendant-Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge Pro Tempore PHILIP C. CIACCIO.
PHILIP C. CIACCIO, Judge Pro Tem.
The defendant, Daniel C. Sullivan, was charged by bill of information with two counts of attempted second degree murder, a violation of La. R.S. 14:(27) 30.1. After originally pleading not guilty, a lunacy commission determined that defendant was competent to stand trial. Defendant changed his plea to not guilty and not guilty by reason of insanity. A second lunacy commission was appointed, and defendant was again found competent to stand trial. Defendant filed a motion to represent himself and the trial court appointed the Loyola Law Clinic to assist defendant. A jury found defendant guilty as charged on both counts. Defendant was sentenced to seven years at hard labor without benefit of parole, probation, or suspension of sentence on each count with the sentences to run concurrently with each other. Defendant now appeals.

STATEMENT OF THE FACTS
On December 20, 1994, Clarence Dungan, a driver for Glen's Cabs, went to a bar to pick up a passenger. He testified that he recognized the person he picked up as someone he had driven some four times in the past year. He further testified that the passenger had a knot over his left eye and had a mustache, and he subsequently identified the passenger as defendant. He also stated that he allowed defendant to sit in the front seat of the cab because defendant was so intoxicated. He drove defendant to 730 Sumner Street in Algiers; and, when they arrived at that address, defendant told Dungan that he did not have any money on him to pay the fare and had to go inside to get the money. Defendant went inside; and, when he came back out, he was armed with a shotgun. Dungan testified that he drove around the corner and called for help. He stated that he could see defendant kneeling in his front yard. Wayne Yoder, another cabdriver, *1104 heard Dungan's call for help and went to the scene. Dungan testified that defendant then shot out the driver's side window of his cab. A second shot was fired at Yoder's cab, and it hit the windshield. Yoder testified that he did not see who shot his cab. Dungan stated that about a week after the shooting, his wife removed two BB's from his neck.
Officer Luis Suarez heard the shots as he approached the area. The officer saw a man come out of the house and ordered him to get down on the ground. Dungan told the police that he was not the man who shot at him and Yoder because the man who shot at them was much younger. The man was defendant's brother Kenneth who lived on the other side of the duplex house. A SWAT team was called to the scene, and a standoff ensued until defendant surrendered several hours later. In the meantime, Suarez obtained an arrest warrant for defendant and a search warrant for defendant's residence, which was given to a member of the SWAT team, which later arrested defendant.
Officer Byron Winbush testified that he examined a Serus model .320 gauge semiautomatic shotgun and that he fired a .20 gauge shotgun shell from it. He stated that the markings on the shell he fired matched the markings on the shells recovered from the scene.
Nancy Sullivan testified on defendant's behalf, and she stated that she heard nothing on the night in question except a car backfiring.

ERRORS PATENT & PRO SE ASSIGNMENT OF ERROR NO. 11
A review of the record for errors patent reveals that defendant's sentences were imposed without benefit of parole, probation, or suspension of sentence. At the time of the offense, the sentence for attempted second degree murder did not prohibit eligibility for parole, probation, or suspension of sentence. State v. Talbert, 543 So.2d 585 (La.App. 4 Cir.1989). Accordingly, defendant's sentences will be amended to delete the requirement that he serve them without benefit of parole, probation, or suspension of sentence. State v. Green, 93-1432 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, writs denied, 96-1131, 96-1248 (La.10/4/96) 679 So.2d 1379, 1380.

ASSIGNMENT OF ERROR NO. 1 & PRO SE ASSIGNMENT OF ERROR NO. 2
In his first assignment of error, defense counsel complains that defendant was denied his Sixth Amendment right to counsel when he was forced to represent himself at trial due to the ineffectiveness of his court-appointed counsel. He argues that the record does not support the trial court's ruling that defendant validly and intelligently waived his right to be represented by counsel. He points to the fact that two lunacy commissions were appointed to determine defendant's competency to proceed and that defendant had a ninth grade education. In his pro se brief, defendant complains about the attorneys who represented him prior to his representing himself and cites various alleged deficiencies in their representation of him.
In State v. Desdunes, 576 So.2d 520 (La. App. 4 Cir.1990), writ granted and transferred 577 So.2d 1011 (La.1990), this court extensively discussed the issue of a defendant's waiver of his right to counsel and proceeding pro se. The court stated:
Without a knowing and intelligent waiver of the right to counsel, no person may be imprisoned for an offense unless he is represented by counsel at trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). The accused may waive his right to counsel and exercise the right to self-representation so long as the record reflects that the waiver of counsel has been knowingly and intelligently made. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Relevant to a determination of whether there has been an intelligent waiver are the facts and circumstances of each case including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Also pertinent to such a determination is the trial judge's assessment of a defendant's literacy, competency, understanding and volition. Faretta, supra.

*1105 The choice of self-representation can only be made after the defendant has been made aware of the dangers and disadvantages of self-representation "so that the record will establish that `he knew what he is doing and his choice is made with eyes open.'" Faretta, [422 U.S. at 834-36, ]95 S.Ct. at 2541. The record must also reflect that the defendant's choice of self-representation is clear and unequivocal. State v. Hegwood, 345 So.2d 1179 (La. 1977).
The burden of establishing that the defendant knowingly and intelligently waived his constitutional right to the assistance of counsel is on the State. State v. Brooks, 452 So.2d 149 (La.1984), concurring opinion 483 So.2d 140 (La.1986). The propriety of granting a defendant the right to represent himself should be judged by what happens in the subsequent course of the representation; it is the record made in recognizing that right that is determinative. State v. Dupre, 500 So.2d 873 (La. App. 1st Cir.1986), writ denied 505 So.2d 55 (1987).
Though a defendant does not have a constitutional right to be both represented and representative, the district court has the discretion to appoint an attorney to assist a pro se defendant. State v. Dupre, supra; see State v. Bodley, 394 So.2d 584 (La.1981), concurring opinion 435 So.2d 421 (La.1983); State v. Boettcher, 338 So.2d 1356 (La.1976). However, when the accused assumes functions that are at the core of the lawyer's traditional role he will often undermine his own defense. Because he has a constitutional right to have a lawyer perform core functions, he must knowingly and intelligently waive his right to assistance of counsel despite the presence of a court-appointed adviser. State v. Dupre, supra.

State v. Desdunes, 576 So.2d at 523-524.
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges and the penalty range and should inquire into the defendant's age, education, and mental condition. State v. Mahogany, 96-1137 (La.App. 4 Cir. 4/30/97), 694 So.2d 505, writ denied 97-1405 (La.11/7/97), 703 So.2d 33. The court should determine whether the defendant understands the significance of the waiver under the totality of the circumstances; and there must be a sufficient inquiry (an interchange with more than "yes" or "no" responses from the defendant) to establish on the record that the defendant is making an intelligent and knowing waiver. Id. Further, the trial court should advise the defendant of the pitfalls of self-representation such as failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing trials. Id.
In the present case, there were numerous pretrial hearings at which the trial judge questioned defendant about his proceeding pro se. Defendant did not express his desire to represent himself until after the two lunacy hearings had been conducted, and defendant was found competent to stand trial and was deemed sane at the time of the offense. Defendant first expressed his desire to waive counsel at a pretrial hearing on October 2, 1995, at which defendant's appointed counsel did not appear. The trial judge advised defendant against representing himself; and, defendant replied "If I'm to be sold out, I would rather have it be done by my own lips than by that of a harlot." The judge told defendant to discuss it with a lawyer before he would rule.
The next hearing was held on November 29, 1995, at which defendant again represented himself. The judge asked defendant if he was going to represent himself, and defendant told the judge that he had been prejudiced and biased by the O.I.D.P. The judge told defendant that before he could let him represent himself, he had to be assured that defendant was capable of doing so. Defendant responded that he had already been found competent and able to distinguish right from wrong. The judge asked defendant how much education he had, and defendant said that he had an eleventh grade education. The judge explained the charges against him and the sentencing range if he were found guilty, and the transcript notes that defendant nodded affirmatively. The judge urged defendant to have representation; and, despite defendant's protests, the judge said *1106 that he was going to appoint a lawyer to represent him.
The next hearing was on December 18, 1995; and, defendant again requested that he be allowed to represent himself. The judge told defendant that he was appointing the Tulane Law Clinic to represent him. However, the trial court later appointed the Loyola Law Clinic to assist defendant on December 27, 1995.
It does not appear that the trial court erred in allowing defendant to represent himself considering the record. Defendant clearly and unequivocally expressed his desire to represent himself, and his waiver of his right to counsel was knowingly and intelligently made. The trial court repeatedly cautioned defendant against representing himself. Contrary to the statement in defense counsel's brief, defendant had an eleventh grade, not ninth grade, education. The two lunacy hearings established that defendant was mentally competent. At the first lunacy hearing, Dr. Sara Deland stated that although defendant suffered some depressive symptoms and from alcohol abuse, he understood the proceedings against him and had the ability to assist his attorney. At the second lunacy hearing, Dr. Richard Richoux testified that defendant suffered from chemical dependency and noted that over six years earlier defendant had been treated for mental problems. Dr. Richoux concluded that defendant was legally sane at the time of the offense. Accordingly, defendant's constitutional right to counsel was not violated by his representing himself.
Defendant, in his pro se brief, complains that he received ineffective assistance of counsel before he began to represent himself. He mainly complains about the actions of Mark Nosacka at the preliminary hearing and his handling of motions to suppress the identification and the evidence and the motion for speedy trial. He also complains that Nosacka allowed an in-court identification to take place at the preliminary hearing and that he did nothing for defendant's well-being and aided the prosecution. He also makes an argument that his counsel was not fully informed as to what occurred.
Generally, the issue of ineffective assistance of counsel is a matter more properly raised in an application for post-conviction relief to be filed in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Sparrow, 612 So.2d 191 (La.App. 4 Cir.1992). Only when the record contains the necessary evidence to evaluate the merits of the claim can it be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, writ denied, 94-2087 (La.1/6/95), 648 So.2d 921. Considering the nature of defendant's complaints about Nosacka, the better course would be for defendant to assert his claims of ineffective assistance in an application for post-conviction relief so that an evidentiary hearing can be held to determine the merits of the claims. Accordingly, there is no merit to the assignment of error filed by defense counsel, and defendant has the right to assert the allegations of ineffective assistance set forth in his pro se brief.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains that the trial court erred in not ordering an out-of-court identification procedure at the motion hearing held on April 13, 1995, where Dungan identified defendant as the person he drove to 730 Sumner and who shot at his and Yoder's cabs. A review of the transcript of that hearing shows that no request for such a procedure was ever made, and it should be noted that defendant was represented by counsel at this hearing. An irregularity or error cannot be availed of after the verdict unless it was objected to the time of its occurrence. La. C.Cr.P. art. 841. Accordingly, defendant has failed to preserve the error for appellate review. State v. Johnson, 94-1369 (La.App. 4 Cir. 3/16/95), 652 So.2d 1069, writ denied 95-0966 (La.10/13/95), 661 So.2d 494. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3 & PRO SE ASSIGNMENT OF ERROR NO. 6
In his third assignment of error, defense counsel complains that the trial court erred in allowing testimony concerning the shotgun allegedly used in the crime when the ballistics *1107 report was not produced until the day of trial. In his pro se brief, defendant argues that the ballistics report was inadmissible because the shotgun shells were not introduced into evidence.
A review of the record shows that no objection was made to the introduction of the report on the basis of any discovery violations. Additionally, defendant did not raise his objection that the report was not admissible because the shotgun shells were not admitted into evidence until after the State rested its case and long after the jury heard Officer Winbush's testimony about the results of the ballistics test. An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of its occurrence. La.C.Cr.P. art. 841. Accordingly, defendant has failed to preserve the error for appellate review. State v. Johnson, 94-1369 (La.App. 4th Cir. 3/16/95), 652 So.2d 1069, writ denied 95-0966 (La.10/13/95), 661 So.2d 494. These assignments of error are without merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In his first pro se assignment of error, defendant complains that the warrant for his arrest was invalid. He asserts that misrepresentations were made in the affidavit used to obtain the arrest warrant, but he makes no complaint that as a result of the arrest, evidence was unlawfully seized from him or that any inculpatory statements or confessions were unlawfully obtained by the police. The trial court held a preliminary hearing at which it found probable cause after hearing testimony from Dungan, Yoder, and Officer Suarez.
Probable cause for arrest exists when the facts and circumstances known to the police and of which the police have reasonably trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed a crime. State v. Williams, 448 So.2d 659 (La.1984). The magistrate's independent judgment that probable cause exists for the issuance of an arrest warrant may be based on the facts and circumstances set forth in the affidavit as well those asserted verbally by the officer at the time the warrant is obtained. Id. However, if intentional misrepresentations designed to deceive the magistrate are made by the affiants seeking the arrest warrant, the warrant must be quashed. Id.
If probable cause is found not to exist after the holding of a preliminary hearing, the trial court shall order that the defendant be released from custody or bail. La. C.Cr.P. art. 296. However, such a release does not have the effect of a judicial dismissal of the pending bill of information but merely releases the defendant from the inconvenience of custody or bail; and, the district attorney must then decide whether the defendant will be brought to trial or the charge dismissed. State v. Sterling, 376 So.2d 103 (La.1979).
Even if there were intentional misrepresentations in the affidavit in support of the arrest warrant, thereby negating the existence of probable cause, defendant would not be entitled to a dismissal of the charges against him. Moreover, since defendant has not assigned as error that the State used any unconstitutionally seized evidence against him, he is not entitled to a reversal of the convictions. This assignment of error is without merit.

PRO SE ASSIGNMENTS OF ERROR NOS. 3 & 4
In his third pro se assignment of error, defendant complains that he was denied due process of law and equal protection of the law; and, in his fourth pro se assignment of error, defendant complains that he was denied the right to a fair and impartial trial. He makes numerous arguments in support of his claims that his constitutional rights were violated in various ways by the trial court, the State, and the attorneys who represented him. These two assignments of error are being discussed together because they contain essentially the same complaints.
He first complains that he was "singled out for the charged crime of attempt [sic] murder even though the least responsive verdict `aggravated battery' had not been committed." There is no merit to this claim in that the evidence has been found sufficient to *1108 support the convictions. See Pro Se Assignment of Error No. 9, infra.
Defendant further complains about the identification procedure, but the substance of this issue was discussed in Assignment of Error No. 2, above. It was found to be without merit due to the failure to object.
Defendant also complains about the inaction of his appointed lawyers. The issue of ineffective assistance of counsel was discussed in Pro Se Assignment of Error No. 2, above; and, we concluded that this issue should be asserted in an application for post-conviction relief due to the insufficiency of the record regarding the actions taken by defendant's appointed counsel. Defendant also complains about his being unrepresented; but, as discussed in Assignment of Error No. 1, above, defendant adequately waived his right to counsel.
Defendant additionally asserts that there was a violation of his right to discovery, namely the withholding of the names of the SWAT team officers and the late production of the firearms report. Defendant argues that the names of the SWAT team members may have been exculpatory evidence and that the trial court should have ordered the State to produce it. At trial, defendant asked Officer Suarez for the names of the SWAT team members; and, the trial court sustained the State's objection. It does not appear that the trial court erred in not ordering production of the names of the SWAT team members, either before or during trial. Defendant now asserts that he needed the names of these officers to "attack the credibility of alleged shot hull." It appears that defendant is arguing that he wanted to challenge the chain of custody of the shotgun shell retrieved from the scene; however, defendant did not raise this particular issue when Officer Winbush testified or when he asked Officer Suarez about the names of the SWAT team. Under La.C.Cr.P. art. 841, the defendant must make known the grounds for his objection; and, he is limited on appeal to those grounds articulated at trial and must point to the specific error so that the trial court has the opportunity to make the proper ruling and prevent or cure any possible error. State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied 590 So.2d 1197 (La. 1992), cert. denied, Baker v. Louisiana, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992). Thus, there is no basis for review.
Defendant also complains about the trial court's failure to rule on pretrial motions, but he does not specify which pretrial motions the trial court failed to rule upon. At the beginning of trial, defendant raised motions to recuse and to quash; and the trial judge said that he was denying the motions. Other hearing transcripts show that the trial judge did rule upon various other motions filed by defendant.
Defendant further complains about the unavailability or absence of various transcripts and the failure to transcribe the opening statements, the closing arguments, and the jury instructions. The record has been supplemented with a complete transcript of the jury instructions; thus, there is no basis for his complaint that this transcript has not been made part of the appeal record. As to the opening statements and closing arguments, the record shows that portions showing objections were transcribed and made part of the appellate record. Defendant has not made any assignments of error regarding the transcribed portions of the opening statements and closing arguments; and, because La.C.Cr.P. art. 841 precludes appellate review when a contemporaneous objection has not been made, the failure to include a transcript of the unobjected-to portions of the opening statements and closing arguments has not prejudiced defendant. As to any transcript omissions, this issue will be discussed in Pro Se Assignment of Error No. 12, below.
Defendant's final complaint under these assignments of error is that the trial court erred in instructing the jury on the intent element of attempted second degree murder, namely that the State had to prove that defendant had to have specific intent to kill or inflict great bodily harm. A review of the transcript of the jury charges shows that the trial court did so instruct the jury. Specific intent to inflict great bodily harm is not an element of attempted murder. State v. Cavazos, 610 So.2d 127 (La.1992). Therefore, *1109 the trial court erroneously instructed the jury.
However, the transcript shows that defendant did not lodge an objection to this erroneous charge. Ordinarily, appellate review is precluded by the failure to object. La.C.Cr.P. arts. 801, 841; State v. Bourque, 622 So.2d 198 (La.1993). Citing State v. Thomas, 427 So.2d 428 (La.1982), this court in State v. Chisolm, 95-2028 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195, refused to apply the plain error rule where the trial judge incorrectly instructed the jury that specific intent to inflict great bodily harm was an element of attempted second degree murder. In Thomas, the Supreme Court stated that there was no plain error review of general application and that it was unlikely that even if plain error review were granted, it would not warrant relief because the defendant failed to demonstrate that he was substantially prejudiced by the error. In Chisolm, the court stated that the erroneous jury charge was harmless and did not prejudice the defendant because the defendant ambushed the victim at night and shot him eleven times at fairly close range. In the present case, defendant has not stated in his brief how he was prejudiced by the erroneous jury charge on intent. We find that this error was harmless.
Accordingly, these assignments of error are without merit.

PRO SE ASSIGNMENT OF ERROR NO. 5
In his fifth pro se assignment of error, defendant complains that the trial court erred when it allowed hearsay testimony into evidence during his cross-examination of Officer Asaro (although in his brief he refers to the officer as being Suarez) regarding the description of the shooter given to him by Dungan. He asked Asaro if it was correct that Dungan had told him that the perpetrator went into the house; and, Asaro replied, "730 Sumner. The residence at 730 Sumner." Defendant asked Asaro if he was agreeing with what he said, namely that the man, Dungan, said that the perpetrator went into that house. When Asaro said, "Correct. Dungan ___," defendant objected on the basis of hearsay. The trial court overruled the objection by telling defendant that he could not ask a question and then object to the answer. If the basis for the hearsay objection was that Asaro was repeating what Dungan had told him, defendant deliberately elicited this hearsay in not just this instance but in the earlier questions he had asked Asaro about what he had been told by Dungan. There was no error in the trial court's ruling.
Defendant also appears to be complaining about the admission of other hearsay during this officer's testimony, but the transcript does not show that any objections were made. Thus, any appellate review is precluded by the failure to lodge an objection. La.C.Cr.P. art. 841. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 7
In his seventh pro se assignment of error, defendant complains that the trial court erred in not trying his case within a reasonable time. He asserts that he was prejudiced by the delay because his key witness in support of his insanity defense did not testify.
La.C.Cr.P. art. 578 requires that trial in a non-capital felony case be commenced within two years of the institution of prosecution. Under La.C.Cr.P. art. 580, the time period set forth in Article 578 is suspended until the trial court's ruling when the defendant files a motion to quash or preliminary plea; but in no case shall the State have less than one year after the ruling to commence trial.
Besides these statutory provisions, a defendant has the right under the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution to a speedy trial. This constitutional right attaches when an individual becomes an accused either by formal indictment or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Sweeney, 443 So.2d 522 (La.1983). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out the following four factors to determine whether a defendant's right to a speedy trial has been violated: (1) the length of the *1110 delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) the prejudice to the defendant. The court held that the length of the delay was the triggering mechanism; and, until the delay was presumptively prejudicial, there was no need to inquire into the other factors. The court further stated that the length of the delay that would provoke such an inquiry was dependent upon the peculiar circumstances of the case. The court noted that the reason for the delay was closely related to the length of the delay and that different weights should be given to different reasons. As to the defendant's assertion of his right to a speedy trial, the court stated that the assertion of the right was entitled to strong evidentiary weight in determining whether the defendant was deprived of his right. Regarding the final factor, the court stated that prejudice was to be assessed in light of the interests of the defendant which the speedy trial right was designed to protect. The court identified those interests as preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the defendant, and limiting the possibility that the defense would be impaired.
Nearly eighteen months elapsed between the filing of the bill of information and trial on the merits. There was no violation of defendant's statutory right to a speedy trial under Articles 578 and 580; but, this delay should be deemed presumptively prejudicial as to defendant's constitutional right to a speedy trial.
In the eighteen months between the filing of the bill of information and trial, two lunacy commissions were convened to determine whether defendant was competent to stand trial and whether he was sane at the time of the offense. Additionally, a preliminary hearing was held, as well as hearings on defendant's motion to waive counsel. Twice, the State moved for a continuance on the grounds that a witness was unavailable for trial.
It does not appear that defendant's right to a speedy trial was violated. Part of the delay could be attributed to motions filed by defendant and to the necessity of convening the two lunacy commissions. As to defendant's assertion that a witness who would have supported his insanity defense did not testify due to the delay, defendant does not state what testimony this witness would have given. Moreover, defendant changed his plea from not guilty and not guilty by reason of insanity to not guilty prior to trial. Thus, any testimony from this unnamed witness as to defendant's sanity would have been irrelevant. It should also be noted that in Writ No. 96-K-0579, this court found no violation of defendant's right to a speedy trial under La.C.Cr.P. art. 701 because the trial delays resulted from consideration of defendant's pretrial motions. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 8
In his eighth pro se assignment of error, defendant complains that he was denied his right to compulsory process. He argues that he relied solely on the trial court in obtaining witnesses on his behalf and that the two witnesses who did appear pursuant to subpoenas issued on his behalf, Officer Suarez and Nancy Sullivan, were favorable to the State. A review of the trial transcript shows that the trial court recessed trial for an entire day so that instanter subpoenas could be issued to four witnesses that defendant wished to call. Only two of these witnesses were served. The two witnesses who did not appear were an Officer B. Bono and an Officer Lindsey (whose name was misspelled as Limosey).
In State v. Lee, 446 So.2d 334 (La.App. 4 Cir.1984), this court stated that a defendant's right to compulsory process to obtain witnesses in his behalf is guaranteed by both the state and federal constitutions. La. C.Cr.P. art. 731 provides that the trial court shall issue subpoenas for the compulsory attendance of witnesses at hearings or trials when requested to do so by the State or the defendant.
In State v. Lee, supra, the defendant was given the opportunity to subpoena alibi witnesses; however, the address that he gave to the criminal sheriff did not exist. A sheriff's deputy, accompanied by someone supplied by the defense, attempted to find these witnesses during the two days of trial. After *1111 notifying the court that the witnesses refused to come to court, the defendant did not request that the deputies bring the witnesses in, did not request that instanter subpoenas be issued, and did not object when trial was resumed without further action being taken to secure the presence of the witnesses. This court found that the trial court did not err by proceeding with trial.
As to the two witnesses who did not appear, the trial transcript shows that defendant wished to call Limosey/Lindsey to support defendant's claim that he had $196.52 in his possession when he was arrested and taken to Central Lockup and thus had no need to avoid paying a $6.00 cab fare. Defendant was allowed to retrieve a document showing that he did have money in his possession when he was booked. The trial judge said that he thought this was, at best, a tangential issue. Defendant further stated that he wanted to call Bono so that Bono could tell the jury in-depth detail about departmental procedures, identification of perpetrators, and the nature of attempted second degree murder. However, defendant further stated that he would waive Bono's appearance and rest his case.
Because defendant specifically waived any objection to Bono's not being served, the only remaining issue is whether his right to compulsory process was violated when Limosey/Lindsey was not served with the instanter subpoena. Under the circumstances, it does not appear that defendant was prejudiced because he was still able to present documentary evidence that he had money in his possession at the time of his arrest. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 9
In his ninth pro se assignment of error, defendant complains that the evidence was insufficient to support his conviction. The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Also, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
To support a conviction for attempted second degree murder, the State must prove that the defendant had the specific intent to kill and committed an act tending toward the accomplishment of that goal. La. R.S. 14:27(30.1); State v. Banks, 496 So.2d 1099 (La.App. 4 Cir.1986). Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158 (La.4/10/95), 653 So.2d 526. Specific intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1); State v. Marshall, 94-1282 (La.App. 4 Cir. 6/29/95), 657 So.2d 1106.
The primary issue at trial was defendant's identity as the shooter. Defendant repeatedly challenged Dungan's identification of him. Dungan testified that he had driven defendant home on other occasions and that defendant sat with him in the front of the cab. Dungan also testified that he saw defendant come out of his house with the shotgun and could see defendant in his yard just before the shooting began. The State proved beyond a reasonable doubt that defendant was the person who shot at the two cabs and that he had the specific intent to kill. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 10
In his tenth pro se assignment of error, defendant complains that the trial court *1112 abused its discretion in allowing prejudicial and irrelevant evidence into trial, namely photographs of broken glass in the taxicabs, which he argues are inconclusive as to the source of the breakage.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Photographs of the broken glass in the taxicabs showed where the shots entered the two taxis and were therefore relevant to show if defendant had the requisite specific intent to kill Dungan and Yoder. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 12
In his eleventh pro se assignment of error, defendant complains that his right to an appeal has been abridged by alterations to the trial transcript. He asserts that the trial transcript contains many deviations from what was actually said at trial and that his objections were even removed. He cites only one instance of alleged transcript alteration at page 105, lines 29-30 in which he objects to a statement made by the prosecutor during closing argument regarding Dungan's description of the passenger. Defendant does not state in his brief what is missing from this objection. Because the transcript shows that his objection was transcribed, there is no merit to this assignment of error.
For the reasons stated, we affirm the defendant's convictions. Defendant's sentences are amended to delete the provision that they be served without benefit of parole, probation, or suspension of sentence.
CONVICTIONS AFFIRMED; SENTENCES AMENDED.